**TEXAS TELEPHONE CO. et al. v. CITY OF MART et al. (No. 6273.)**

(Court of Civil Appeals of Texas. Austin. Dec.. 8, 1920.)

1. **Telegraphs and telephones ⊕⟶10(4)—Local telephone exchange cannot use streets without city's consent.**

Under Rev. St. 1911, art. 1231, a long distance telephone company may use the streets of a city for its poles without the consent of the city, subject only to regulations as to where the same shall be placed, but a local telephone exchange has no right to use the streets without permission of the municipal authorities.

2. **Telegraphs and telephones ⊕⟶10(10)—License to use streets must be complied with.**

A license to use streets granted to a telephone company by the authorities of a municipality must be complied with so long as the company accepts the benefits.

3. **Telegraphs and telephones ⊕⟶33(1)—Franchise fixing rates binding.**

Where a city having the right to refuse a local telephone company a franchise to use the streets grants the same by an ordinance fixing the rates for service, a contract is created when the company accepts the benefits of the franchise, and it cannot deny the authority of the city to make the same.

4. **Telegraphs and telephones ⊕⟶33(1) — Injunction against rates violating franchise proper remedy.**

Where a local telephone company charged rates in excess of those permitted by its franchise contract, an injunction sought by the municipality and subscribers will not be denied, on the theory that they had adequate legal remedy.

5. **Telegraphs and telephones ⊕⟶33(1)—Violation of franchise rates not excused by increased price of labor and materials.**

Where a company operating a local telephone exchange accepted a franchise fixing the rates, the courts cannot annul the contract because labor and materials had increased so that it was no longer profitable, and hence, in a suit to enjoin the collection of increased rates, such facts constituted no defense.

6. **Telegraphs and telephones ⊕⟶26¾, New, vol. 7A Key-No. Series—Rates collected on abandonment of federal control held lawful.**

As act of Congress under which the federal control of telegraphs and telephones was terminated, provided that existing rates as established by the Postmaster General should be continued for four months, unless sooner modified by the local authorities, a rate fixed by the Postmaster General which exceeded the franchise rate of a local telephone company remained in effect until the end of four months, the same not being modified or changed, and hence, in a suit to enjoin the charging of the increased rate, the company could not be required to repay the excess in rates charged during the four-month period.

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

Action by the City of Mart and others against the Texas Telephone Company and another. From a judgment for plaintiffs, defendants appeal. Reversed and rendered in part and in part affirmed.

Sleeper, Boynton & Kendall, of Waco, for appellants.

R. W. Cowan, of Mart, for appellees.

JENKINS, J. Appellee, the city of Mart, and certain subscribers to appellant's local telephone exchange, suing for themselves and all others similarly situated, brought suit to restrain appellant from charging such subscribers more than $1.50 per month for use of its residence telephones, and more than $3 per month for use of its business telephones.

It was alleged, in substance: That the city of Mart was a town of less than 5,000 inhabitants, incorporated under the general laws of Texas; and that the Texas Telephone Company was a corporation, operating a local telephone exchange in said town. That on and prior to June 29, 1915, there were two local telephone exchanges in said town, one owned and operated by Southwestern Telegraph & Telephone Company, and the other by the Long Distance Telephone Company, now the Texas Telephone Company, the appellant herein. That appellant was then, and prior thereto had been, operating its exchange under a franchise from the city of Mart, wherein the rates to subscribers for the use of its telephones was fixed at $1.50 each for its residence telephones, and $2.50 each for business telephones. That at the date above mentioned, the appellant being desirous of obtaining the property of the Southwestern Telegraph & Telephone Company's local exchange, and to merge said exchange, and to obtain a franchise from the city of Mart to operate such merged exchange, upon agreement with appellant, the city of Mart passed an ordinance, permitting such merger and granting such franchise, and fixing the rates for telephone service at $1.50 per month for residence telephones and $3 per month for business telephones, until such time as the subscribers should reach the number of 1,000, after which the rates were to be increased 50 cents per month to each subscriber. Said ordinance further provided that the work of consolidation should be done under the direction of the city authorities, and that appellant should hold the city harmless from any damages that might arise from the performance of the work of consolidation. That appellant accepted said ordinance, and thereafter acted thereunder until during the year 1918, when said exchange was taken over and operated by the federal government as a war measure. That the federal government, while in control of said exchange, fixed the rates for the use of its phones at $2 per month for residence telephones, and $3.50 per month for business telephones. That on July 31, 1919, the federal government turned said exchange back to appellant. That on August 29, 1919, the city council of Mart requested appellant to restore the rates in force prior to the time the same was taken charge of by the government. That appellant refused to comply with said request, but has continued to collect the rates fixed by the government, and will continue so to do unless restrained by order of court. That there are only about 500 telephones in use in said city.

The petition was duly verified. Appellant filed several exceptions to appellees' petition, and made certain allegations of fact as reasons why it should not be restrained from charging the increased price as alleged by appellees. Appellees filed certain exceptions to appellant's answer, which were sustained. The issues involved in such exceptions will be stated in this opinion so far as the same are necessary to a decision herein. Judgment was rendered, perpetually enjoining appellant from charging rates higher than those fixed in the ordinance referred to, and that the subscribers, appellees herein, recover the excess rates paid by them.

### Opinion.

The first and second assignments are as to the court's sustaining an exception to that part of appellant's answer which alleged that the city of Mart was without authority to pass an ordinance regulating the charges on telephones, for the reason that said city was incorporated under the general laws of the state, under which no such authority is given.

[1, 2] Long distance telephone companies have the right to use the streets of a city for the purpose of erecting their poles and lines, without the consent of said city, subject only to reasonable regulations as to where the same shall be placed. Brownwood v. Brown, 157 S. W. 1163. This right is secured by statute. R. S. art. 1231. No such right exists, however, as to a local telephone exchange. Such exchange has no right to use the streets of an incorporated town without permission of the constituted authority of such town. Athens Tel. Co. v. Athens, 163 S. W. 372. If such permission be only a license and not a contract, the licensee must comply with the terms of the license so long as it avails itself of the benefits thereof. Bastin Tel. Co. v. Mount, 176 Ky. 26, 195 S. W. 112.

[3] Though the city may have had no right to fix by ordinance the rates to be charged by a public service corporation which had theretofore obtained a franchise to conduct its business in such city without restriction as to prices to be charged for its service, yet when such corporation applies for a franchise to use the streets of the city, the city having the right to refuse such franchise, if the same is granted by ordinance in which rates for service are fixed, and the corporation accepts the benefits of such franchise, such facts amount to a contract, and the corporation cannot deny the authority of the city to make the same. Athens Tel. Co. v. Athens, 182 S. W. 42.

[4] We do not think that there is any merit in appellant's contention that the in-

junction should not have been granted, for the reason that appellees had an adequate legal remedy. The court did not err in sustaining appellees' exception to that part of appellant's answer setting up such defense.

[5] The court did not err in sustaining the exception to that part of appellant's answer which alleged that the rates fixed by the ordinance should not be enforced for the reason that since the passage of the same wages had greatly increased, on account of which it could not operate its exchange at said rates without a loss. Courts cannot annul a contract for the reason that its enforcement would prove unprofitable to one of the parties thereto.

[6] Among other reasons set up by appellant in its answer why the rates fixed by the city ordinance should not be enforced was that the control of its exchange was returned to it at midnight July 31, 1919, by an act of Congress (41 Stat. 157) which contained the following:

"Provided, however, that the existing toll and exchange telephone rates as established or approved by the Postmaster General on or prior to June 6, 1919, shall continue in force for a period not to exceed four months after this act takes effect, unless sooner modified or changed by the public authorities—state, municipal, or otherwise—having control or jurisdiction of tolls, * * * and rates or by contract or by voluntary reduction."

The act referred to took effect July 31, 1919. The four months expired November 30, 1919. Judgment was rendered herein November 26, 1919.

The court sustained an exception to this allegation. The effect of this action of the court was to sustain appellees' contention that, the rates having been fixed by contract prior to the time the government took charge of the exchange, the only effect of the action of the government in the matter was to suspend the operation of such contract so long as it remained in control, but that when the government returned the exchange to its owners, such contract automatically again became effective. This would have been true if the government had unconditionally restored the exchange to its owner, and it is true except in so far as the revival of such contract was deferred by the act of Congress referred to.

The telephone rates fixed by the government were not "modified or changed" after the passage of said act before the expiration of four months by any of the authorities therein referred to, for which reason we hold that the rates fixed by the ordinance of the city of Mart did not again become effective until December 1, 1919.

For the reason stated, we hold that the court erred in granting the mandatory injunction, requiring the appellant to repay the alleged excess in rates collected from subscribers, and to that extent the judgment of the trial court is here reversed, and judgment is rendered in favor of appellant. In all other respects, the judgment of the court below is affirmed.

Reversed and rendered in part, and in part affirmed.