ORTEGA COMPANY *v.* TRIAY, RECEIVER OF JACKSONVILLE TRACTION COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 75. Argued October 18, 19, 1922.—Decided November 13, 1922.

1. Under legislation empowering it to make reasonable and just rates to be observed by all railroad companies and common carriers in the State, the Railroad Commission of Florida has power to authorize a railroad company to increase its fare. P. 108.
2. Section 30 of Article XVI of the Florida constitution, in investing the legislature "with full power to pass laws . . . to prevent . . . excessive charges by persons and corporations engaged as common carriers in transporting persons and property," did not by implication withhold power to authorize increases. P. 108.
3. A covenant to operate at a certain fare, made by the vendee in consideration of a sale of an electric railroad, cannot prevent a change of fare directed by public authority, acting in the public interest, under laws existing when the covenant was made.

Affirmed.

APPEAL from a decree of the District Court refusing a preliminary injunction and dismissing the bill, in a suit to enforce a covenant for the operation of an electric railroad for a specified fare, and to restrain the appellee from collecting a higher fare as allowed by a public commission.

*Mr. Herman Ulmer* and *Mr. W. T. Stockton,* with whom *Mr. Geo. C. Bedell* was on the brief, for appellant.

*Mr. Peter O. Knight,* with whom *Mr. John L. Doggett* was on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the Court.

The case is in narrow compass. Its purpose is to enjoin the appellee as receiver of the Jacksonville Traction Company, grantee of the Jacksonville Electric Company as hereinafter stated, and a corporation of Massachusetts, from collecting more than a particular fare, five cents, and to compel the specific performance of an alleged contract providing for such fare.

The grounds of the suit are set forth with great detail but may be epitomized narratively as follows: The Ortega Company was in 1910 and prior thereto the owner of, and operated, a line of electric railroad from the City of Jacksonville to a point in a place designated as "Ortega," in Duval County, Florida. The Ortega Company sold the railroad to R. J. Richardson, February 12, 1910, in pursuance of a contract, and March 6, 1911, Richardson and his wife conveyed the railroad to the Jacksonville Traction Company. Richardson was at all the times agent of the Jacksonville Electric Company.

The conveyance from the Ortega Company contained, among other provisions, the following covenant: "The Jacksonville Electric Company further covenants and agrees that said street railroad shall be operated in such manner that passengers for a single fare of five cents may travel from any point reached by street cars in the City of Jacksonville to the terminus in Ortega and vice versa, over the lines of the Jacksonville Electric Company, and the line conveyed by the Ortega Company." And it was covenanted that "said single fare of five cents shall be sufficient compensation for a continuous journey either way, with such transfers as may be necessary."

The Jacksonville Electric Company went into the possession of the railroad and operated it as agreed upon the basis of a five-cent fare.

At the time of the conveyance, the railroad and its appurtenances were reasonably of the value of $33,157.37, and the conveyance was made in consideration of the covenant and a cash consideration of $10,000—less certain deductions. The cash consideration was of minor import; the principal consideration was the covenant.

At the time of making the contract with the Electric Company, the Ortega Company was engaged in the development of a large tract of land lying in Duval County at the terminus of the Ortega line, and the Company sold the railroad for approximately $26,000 less than its reasonable value upon the express covenant of the Electric Company to operate the line upon a five-cent basis. The continued violation of the covenant will deprive the Ortega Company of property worth many thousand dollars, and will result in irreparable injury to the Company, " the nature and character of which injury redress at law would be uncertain and inadequate, and the damages resulting therefrom impossible of ascertainment."

April 18, 1911, the Jacksonville Electric Company conveyed the railroad to the Jacksonville Traction Company and that company went into possession of the road and operated it in accordance with the covenant.

On October 30, 1919, appellee Triay was appointed receiver of the Traction Company and ever since has been, and still is, acting as receiver, managing and operating the railways and properties of the Traction Company, including the Ortega line.

From the time of the conveyance, to the Jacksonville Electric Company until December 15, 1920, that Company and the Traction Company and appellee, as receiver, successively operated the road on a five-cent basis.

On the        day of January, 1920, appellee filed with the Railroad Commission of Florida a petition asking that

the Commission assume jurisdiction of the rates and fares of the Traction Company and authorize an increase in them. The request was granted December 2, 1920, and a fare of seven cents was authorized and has since been charged.

The Railroad Commission was created by the legislature of the State in 1897, Laws 1897, c. 4549, and was required, (by the same law,) to " make reasonable and just rates of freight and passenger tariff to be observed by. all railroad companies and all others engaged as common carriers doing business in this State." The requirement was repeated by an act passed in 1913, and by the latter act it was made the duty of the Commission to make reasonable and just rules and regulations to enforce the observance by the carriers of their tariffs.

The only provision of the constitution of the State dealing with the powers of the legislature is § 30 of Article XVI, which provides as follows: " The legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures."

By reason of the constitutional provision and limitation, so much, the petition proceeds, of the legislative provisions above stated, as attempts to confer upon the Commission the power to increase the rates and charges of appellee, is unconstitutional and void, and the order of the Commission is void and of no effect, and impairs the obligation of the contract between the Ortega Company and the Electric Company and constitutes a taking of the property of the Ortega Company without due process of law contrary to the Constitution of the United States.

An injunction was prayed pending the suit, and that appellee be compelled to operate the Ortega line at a five-cent fare as covenanted, and that the Ortega Company be granted such further relief as proper and agreeable to equity.

A motion to dismiss the bill for want of equity was made upon the ground that, under the laws and constitution of Florida, the Railroad Commission had the power it exercised in authorizing the Traction Company to increase the fares and charges from five cents to seven cents; and that such power, since the adoption of the constitution in 1885, could not be limited by private contract rights, such rights necessarily yielding to the public welfare as expressed in the laws and constitution of the State.

The court took that view and, quoting § 30 of Article XVI of the constitution relied on by the Ortega Company, rejected that company's construction of it and decided that the Commission could raise as well as lower rates, and that the Supreme Court of the State had so adjudged. The court, therefore, denied the motion of the Ortega Company for a temporary injunction and dismissed the bill.

There are certain admissions of appellant that are pertinent to our consideration: (1) In the absence of constitutional restrictions, a State has the power to raise or lower rates of public utility corporations, and may exercise it through railroad commissions. (2) The power is not lessened or limited by the existence of private contracts. The power is considered as part of the contract. (3) The power exercised to either raise or lower a rate is not in itself and without more an impairment of the obligation of a contract or the taking of property without due process of law.

This power, and its exercise, it is contended, is not applicable to the facts presented in the instant case

because, under the Florida constitution, the legislature is prohibited from increasing rates; it can only lower them. To support this view of the constitution, appellant presents a somewhat elaborate and involved argument terminating in the assertion that § 30 of Article XVI of the constitution grants the legislature "power to prevent excessive charges by common carriers." And this, the further contention is, necessarily means the power to reduce, not to increase. In one direction only, is the contention, may the legislature modify rates, and "that direction is down." And it is added, with emphasis, "the power to prevent excessive charges—power to lower excessive charges—power to reduce excessive charges—all mean the same thing."

The power exercised by the Commission not being possessed, a valid contract, it is asserted, existed between the Ortega Company and the other companies; and that "the order of the Railroad Commission increasing the rate of fares impairs its obligation." And a federal question is presented "for this court to determine, unhampered by state decisions."

It is to be observed that § 30 of Article XVI of the constitution was adopted in 1885, that is, prior to the covenant relied on by the Ortega Company, and that also, prior to the covenant, the Railroad Commission was created and power given it to "make reasonable and just rates of freight and passenger tariffs, to be observed by all railroads." The contention is that if the latter act be construed to give a greater power than § 30 gives, the act is void and § 30 is only to be considered as constituting the obligation of the covenant and this court has the power to construe it "unhampered by state decisions."

The contention is direct and we may accept the power ascribed to us and, exercising it, we say unhesitatingly that we concur with the District Court that under § 30 and the legislation of the State the Commission is com-

petent to increase as well as to decrease rates. And such, we think, as the District Court decided, is the effect given § 30 and the legislation of the State by the Supreme Court of the State, although we cannot say that in any case there is a precise contrast between the power to increase as distinguish·d from the power to decrease rates, which is now the poir , in controversy. We think, however, the power to increase as well as to decrease rates is an inevitable deduction from the reasoning of the cases.

In *State of Florida ex rel. Railroad Commissioners* v. *Atlantic Coast Line R. R. Co.*, 60 Fla. 465, it was said that "the Railroad Commissioners have such powers only as are expressly or impliedly conferred upon them by statute." But, it was further said, "Authority that is indispensable or useful to the valid purposes of a remedial law may be inferred or implied from authority expressly given." Applying this it was further said that a "wide discretion is accorded to them [the Railroad Commissioners] in the exercise of such authority."

In *State of Florida ex rel. Railroad Commissioners* v. *Atlantic Coast Line R. R. Co.*, 61 Fla. 799, it was decided that the difficulty of enumerating all of the powers conferred upon the Commissioners in the interest of the general welfare made it necessary to confer some in general terms, "and general powers given are intended to confer other powers than those specifically enumerated."

In *State of Florida ex rel. Railroad Commissioners* v. *Florida East Coast Ry. Co.*, 57 Fla. 522, § 30 of Article XVI is quoted, and it was said of it that it was "not a grant of power to the legislature, nor is it a limitation upon the power of the legislature, but it is an express recognition of a power existing in the legislative department of the State government."

It will be observed, therefore, that the Board of Railroad Commissioners is constituted by the legislature and that the powers are conferred upon the board in general

terms to be exercised in the public welfare, and a wide discretion is accorded it which is not constrained by peremptory directions. The powers are quasi legislative, the public welfare being their test and measure. *State ex rel. Swearingen* v. *Railroad Commissioners,* 79 Fla. 526, 532. There is nothing in the words " excessive charges " in § 30 of Article XVI, nor in their context, that requires the regulation of the charges to be downward and not upward, if the charges authorized be not excessive.

Necessarily, therefore, we affirm the action of the District Court; but while this denies the relief the Ortega Company prays against appellee, we do not wish to be understood as adjudging that the Company may not be entitled to some remedy for the non-observance of the contract by the Traction Company. See *Louisville & Nashville R. R. Co.* v. *Crowe,* 156 Ky. 27.

*Affirmed.*