## FINK v. CITY OF CLARENDON.  (No. 2693.)

(Court of Civil Appeals of Texas.  Amarillo.
March 24, 1926.)

**1. Monopolies ⬤➡6—Franchise authorizing grantee to construct and maintain telephone lines in streets for 20 years held not invalid as monopoly (Const. art. 1, § 26).**

Franchise or contract authorizing defendant to enter on streets and alleys of city to construct and maintain telephone lines for term of 20 years *held* not invalid as a monopoly under Const. art. 1, § 26.

**2. Telegraphs and telephones ⬤➡10(14) — Where franchise ordinance contained no express grant of exclusive privilege to telephone company if such privilege was granted, it was by implication from language of ordinance.**

Where franchise ordinance or contract of city of Clarendon did not expressly grant exclusive right to telephone company to utilize streets, if it granted such exclusive right it must be ascertained by implication from language of ordinance or contract.

**3. Telegraphs and telephones ⬤➡10(14)—Requirement of franchise that grantee furnish telephone service to city and inhabitants did not give it exclusive privilege to supply telephone service.**

Requirement in franchise or contract that grantee furnish telephone service to city and its inhabitants after payment therefor *held* not to give grantee exclusive right and privilege to supply telephone service, but only required it to furnish service to those demanding it, and who were willing to pay therefor.

**4. Telegraphs and telephones ⬤➡10(4)—Statute authorizing use of streets held inapplicable to local telephone system, and hence franchise did not fail for want of consideration (Rev. St. 1925, arts. 1416, 1422 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1231, 1235]).**

Rev. St. 1925, art. 1416 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1231), authorizing telephone company to erect poles and wires in city streets for distance lines subject only to authority given municipality in Rev. St. 1925, art. 1422, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1235, *held* not to include establishing local telephone system not created to maintain distance telephone lines, and hence franchise to local company was not void for want of consideration.

**5. Telegraphs and telephones ⬤➡10(4)—Copartnership held unauthorized to erect telephone lines in streets without consent of town, and hence franchise did not fail for want of consideration (Rev. St. 1925, art. 1416 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1231].**

A copartnership as grantee of franchise to furnish telephone service to town *held* unauthorized to set poles on the streets without consent of the town, since it was not a corporation created to maintain magnetic telegraph lines within Rev. St. 1925, art. 1416, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1231, and hence its franchise did not fail for want of consideration.

**6. Telegraphs and telephones ⬤➡33(1)—City not vested with power to regulate rates charged for telephone service held to have authority to contract therefor.**

While city of Clarendon, having less than 5,000 inhabitants, was not vested with power to regulate rates charged for telephone service within its limits, it was authorized to make contracts for benefit of it and its citizens.

**7. Corporations ⬤➡391.**

The state has innate power to regulate and control rates of public service utilities.

**8. Municipal corporations ⬤➡285—Power of municipality to make franchise contract for local telephone service is implied.**

While authority of municipality to make franchise contract for local telephone service may not be given in express words it is fairly implied and essential to declared purpose of modern municipalities.

**9. Telegraphs and telephones ⬤➡33(1)—Right of municipality to regulate telephone rates by ordinance must depend on authority to contract.**

City not having been delegated power to regulate telephone rates by ordinance must, in so far as it asserts rights based on franchise contract, depend on its authority to contract for benefit of itself and citizens.

**10. Municipal corporations ⬤➡593—Municipality cannot barter away police power delegated to it (Const. art. 1, § 17; article 12, § 5).**

In view of Const. art. 1, § 17, and article 12, § 5, a municipality cannot barter away or abrogate by contract police power delegated to it, nor abolish inherent power lodged in state to regulate rates for public service corporations.

**11. Constitutional law ⬤➡135—No contract can be made by city as to rates charged by public service corporations that is not subject to legislative control (Const. art. 1, § 17; article 12, § 5).**

In view of Const. art. 1, § 17, and article 12, § 5, no contract can be made by a city regulating rates charged by public service corporations that is not subject to legislative control, and no rates can be fixed that are not subject to legislative amendment.

**12. Municipal corporations ⬤➡593—Franchise contract with telephone company held not bartering away of any police power of municipality.**

Franchise contract of city of Clarendon with telephone company *held* not to barter away police power of city because power to regulate telephone rates by legislation was never delegated to city with less than 5,000 inhabitants, and city could not deprive itself by contract of some power it never possessed.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

13. **Telegraphs and telephones** ⊚⟹33(1)—**Until state regulates rates for local telephone service, franchise contract is valid.**

Until the state regulates or delegates power to regulate rates for local telephone service, franchise contract of city therefor is valid as between parties, since they have contracted with reference to right of state to exercise innate authority to control, amend, or modify.

14. **Telegraphs and telephones** ⊚⟹10(4)—**Assignee of telephone franchise contract cannot assail as invalid contract under which he occupied streets.**

Where owners of telephone company maintained local telephone system under privilege granted to them in franchise contract, assignee thereof acquiring property and franchise from owners cannot assail, as invalid, contract under which he occupied streets and carried on his business.

15. **Constitutional law** ⊚⟹46(1)—**Contention that statutes authorizing courts to regulate telephone rates were unconstitutional held immaterial, since court was authorized to restrain defendant from collecting unreasonable rates (Rev. St. 1925, art. 1125 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1025]).**

Contention that 'Rev. St. 1925, art. 1125 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1025) giving courts authority to regulate rates, is invalid, becomes immaterial, since independently of statute court had jurisdiction to restrain grantee of franchise contract from collecting unreasonable rates for telephone service.

16. **Telegraphs and telephones** ⊚⟹33(1)—**Ordinance regulating telephone rates held void as not within city's power.**

Where city of Clarendon had not been delegated power to regulate rates for telephone service in its governmental capacity, ordinance extending telephone franchise, stipulating same rates as were prescribed in a former resolution, *held* void as a legislative measure.

17. **Telegraphs and telephones** ⊚⟹33(1)—**Invalid ordinance stipulating telephone rates held not basis for temporary injunction.**

Where ordinance extending franchise of telephone company and stipulating same rates as were prescribed in a former resolution was void as a legislative measure it could not form basis of temporary injunction restraining telephone owners from charging and collecting more than named price per month for telephone service.

18. **Municipal corporations** ⊚⟹1027.

Suit by municipality should be prosecuted under its proper name.

Appeal from District Court, Donley County; R. L. Templeton, Judge.

Suit by the City of Clarendon against O. L. Fink. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

A. T. Cole, of Clarendon, and E. A. Simpson, of Amarillo, for appellant.

W. T. Link, of Clarendon, for appellee.

JACKSON, J. Appellee, a municipal corporation, organized under the general laws of Texas, and having adopted the commission form of government, sought and obtained from the district court in chambers a temporary injunction restraining O. L. Fink, appellant, the owner of the telephone properties in the corporate limits of Clarendon, from charging and collecting from his patrons for local service more than $2 per month for each resident phone furnished, and more than $3 per month for each business phone furnished.

Appellee alleged that the Clarendon Telephone & Telegraph Company, a partnership composed of T. L. Benedict, Geo. W. Washington, and Dr. W. M. Gray, in the year 1907 had prepared and presented to the proper city officials an ordinance granting to said company a 20-year franchise for doing a telephone business in Clarendon, which ordinance was properly passed and accepted by said company. The city also alleges that this franchise ordinance was amended, and the amendment accepted in the year 1908, but, as there was no change in the amendment that affects the disposition of this appeal, it is unnecessary to consider the original ordinance and the amendment thereto separately.

Appellee specifically pleads certain provisions of said franchise ordinance and the duties and obligations imposed therein and the effect thereof.

The franchise ordinance and the amendment authorizes the Clarendon Telephone & Telegraph Company to erect the necessary poles, wires, and apparatus on and along the public streets, alleys, and grounds of the city of Clarendon, and to maintain and operate its local lines to various parts of the town, for a period of 20 years. The provisions of the ordinance material to a consideration of this appeal read:

"Said Clarendon Telephone & Telegraph Co. their heirs, assigns, executors, and administrators, shall be required, and are hereby required, to furnish to said city of Clarendon and its inhabitants, during the existence of this franchise, all necessary telephones, with proper connections, with a central station within a reasonable time upon demand; provided that the applicant for such telephone pays the customary charge therefor. Said central station to be kept open for the convenience of said city, and its inhabitants, during such hours as are necessary for the business interest and as conditions demand. ·

"Said Clarendon Telephone & Telegraph Co. and their heirs, assigns, executors and administrators shall not in any manner discriminate between the city, or any of the inhabitants thereof, in furnishing telephones to any and all persons residing within the city limits, upon the terms that telephones are furnished other persons, as hereinafter specified.

"That said Clarendon Telephone & Telegraph Co. their heirs, assigns, executors and admin-

istrators, shall establish and maintain uniform rates for telephones, and shall not charge and collect more than $2.50 per month for each telephone furnished to business houses, and not more than $1.50 per month for each telephone furnished and residence houses, provided that said Telephone & Telegraph Co. may require a contract before establishing a telephone in a residence house that said telephone shall in said residence be paid for for a term of six months.

"That should said Clarendon Telephone & Telegraph Co., their heirs, assigns, executors or administrators, fail to establish said telephone and telegraph lines, and exchange within a reasonable time, or having same established, fail to maintain and operate the same, or fail to render to the public reasonable services as herein contemplated during any of the period of time for which this franchise is granted, or fail to perform the things herein before set out, or those hereinafter mentioned, then, and in such instance, said franchise herein granted shall become null and void.

"That for and in consideration of the rights and privileges herein granted to the said Clarendon Telephone & Telegraph Co., their heirs, assigns and executors and administrators, they, the said company above mentioned, shall pay to the city council for the use and benefit of said city of Clarendon, the sum of ($50.00) fifty dollars per year after said telephone company shall secure as many as 200 subscribers, and shall operate free of charge a fire alarm and place the same in a convenient building to be designated by the city council of said city, provided said council buy the necessary instruments to operate said fire alarm. Said Telephone & Telegraph Co. further agrees to establish and maintain one telephone for the use of the said town officials, said building to be designated by said city council."

In pursuance to this ordinance the telephone company established a local telephone system in the city, which system has continually and still uses the streets, alleys, and public grounds for its poles, wires, and apparatus.

On April 1, 1922, the company secured from the city officials an extension of the life of said ordinance for a period of an additional 25 years. The prescribed rates for service by the ordinance were maintained by the company until about October 1, 1918, when they were increased by a resolution of the city authorities to the sum of $2 per month for each residence telephone and $3 per month for each business telephone, which increased rates were charged until January 1, 1923, when the appellant herein by purchase became the owner of the Clarendon Telephone & Telegraph Company, and continued to furnish telephone service for said last-named rates until about December 1, 1925, at which time, and in violation of the franchise, he arbitrarily increased the rates for local telephone service to $2.50 per month for each residence telephone and $4 per month for each business telephone in the corporate limits of the city, and, unless his patrons pay this charge not later than the 10th of the month, he discontinues the service.

Appellee alleges in detail the number of telephones in use, both residence and business; the value of the system; the cost of operation, including taxes and depreciation; the gross revenues derived from operation; and that the rate of $2 per month for residence telephones and $3 per month for business telephones, together with the other revenues, actually yield appellant an excess of 10 per cent. upon the value of his investment and plant, and a reasonable and fair return upon the value of the properties used and useful in conducting his telephone business; that in charging and collecting $2.50 per month for each residence telephone and $4 per month for each business telephone the appellant is violating the contract imposed in the franchise ordinance with the city, and is charging an unfair, unjust, and unreasonable rate for the service rendered, and that he is actually collecting, and will continue to collect, such unreasonable and excessive rate for such service unless restrained; that on or about December 8, 1925, the city officials adopted an ordinance permitting appellant to charge for telephone service within the city not exceeding $2 per month for each residence telephone, and not exceeding $3 per month for each business telephone, but said ordinance has been wholly ignored by the appellant, and that irreparable damages will result unless appellant is restrained from violating such ordinance in charging such unreasonable and excessive rates; that appellee, acting by and through its duly constituted officials, passed a resolution complaining of the action of appellant in increasing said telephone rates, a true copy of which was delivered to him on January 4, 1926, but he ignored such resolution and continued to charge such excessive and unreasonable rates.

The appellant answered, and made a motion to dissolve the temporary injunction granted by the court in chambers, demurred generally and specially, denied the equities of the bill, and pleaded that the rates sought to be enforced by appellee were unreasonable and confiscatory, and set out at length and in detail the value of his properties, the depreciation, the operating expenses, the revenues received, and that the increased rates charged and collected are fair and reasonable, and will not yield 10 per cent. upon his investment.

We have not stated in detail the allegations of facts and figures set out by appellee as a basis for showing that the increased rates charged and collected by appellant were unfair, unjust, and unreasonable, nor the alleged facts and figures pleaded by appellant as a basis for proving the rates sought to be imposed by appellee were confiscatory, and that the rates charged and collected by him were reasonable. These allegations

present issues of fact on whether the rates contended for by appellee are reasonable, unreasonable, or confiscatory, and, in our view of the record, it is not necessary to determine such issues.

[1] Appellant insists that the franchise ordinance or contract granted to the Clarendon Telephone & Telegraph Company an exclusive right and privilege to construct, maintain, and operate a telephone system within the corporate limits of Clarendon for a period of 20 years, and was therefore void, because in violation of the Constitution of the State, art. 1, § 26, which reads, in part:

"Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed."

McQuillin, Municipal Corporations, vol. 4, par. 1635, says:

"A franchise will not be construed as exclusive, in the absence of express words or necessary implication, and a grant of exclusive privileges must be strictly construed against the grantee."

26 C. J. p. 1031, reads:

"Grants of franchises are strictly construed in favor of the public."

Also see City of Memphis v. Dial et al. (Tex. Civ. App.) 174 S. W. 982.

[2] This franchise ordinance or franchise contract contains no provision expressly granting an exclusive right or privilege to the Clarendon Telephone & Telegraph Company; hence, if it grants such exclusive right or privilege, this must be ascertained by clear and necessary implication from the language used in the ordinance or contract.

These rules of construction are recognized and applied in Ennis Waterworks v. City of Ennis, 144 S. W. 930, 105 Tex. 63, and in City of Brenham v. Brenham Waterworks Co., 4 S. W. 143, 67 Tex. 542, on which appellant relies. It will be noted in both of these cases that the privilege granted was to supply the city and its inhabitants with water for various uses for a period of years.

Judge Dibrell, in the Ennis Case, supra, holds that the contract or franchise giving the right to lay mains and pipes in the streets was valid, and that there was nothing in the grant to prevent the city from making similar contracts with another, but that the contract did not stop with granting the franchise to use the streets and alleys and lay mains and pipes for conducting the water to be furnished to the city and its inhabitants, but says:

"It goes further, and, in addition to the grant of franchise, grants the right and privilege * * * 'to supply the city of Ennis and the inhabitants thereof with water for domestic and other uses and for preventing and extinguishing fires.'"

The franchise or contract under consideration authorizes the grantee to enter upon the streets, alleys, etc., of Clarendon and construct, maintain, and operate its telephone lines for public and private use for a term of 20 years. Obviously, there is nothing that renders this general grant exclusive; but appellant contends that the provision that the grantee shall be required to furnish to the city of Clarendon and its inhabitants, during the existence of the franchise, all necessary telephones with proper connection within a reasonable time upon demand, provided the applicant for telephone service pays the customary charge therefor, grants an exclusive right and privilege to the telephone company.

[3] Appellant was required, when it accepted the contract, to furnish service to the city and its inhabitants within a reasonable time after demand and payment therefor, without this provision in the contract, because such duty was implied from other stipulations and as a matter of law. This provision does not give the grantee the exclusive right and privilege to supply telephone service to the city and its inhabitants, but only requires it to furnish service to those who may demand it and are willing to pay the price therefor. The city could grant the same right and privilege to any other person or corporation to furnish telephone service to it and its inhabitants, without infringing the right granted to appellant, and any citizen could secure service from any other available source, to which appellant could urge no valid objection under its franchise contract.

[4] Appellant maintains that by virtue of article 1416, R. C. S. 1925 (article 1231, V. S. C. S.), the telephone company was by the Legislature authorized to set its poles and wires upon and across the streets, alleys, and public grounds of Clarendon without permission from appellee, subject only to the authority given the municipality in article 1422, R. C. S. 1925 (article 1235, V. S. C. S.), to regulate the location of the poles, height of the wires, etc., and therefore the provisions of the franchise failed for want of consideration. Under the decisions, this contention would be sound if the Clarendon Telephone & Telegraph Company had been a corporation created for the purpose of constructing and maintaining "distance telephone lines"; but said company was a partnership that desired the use of the streets, alleys, and public places of Clarendon for the erection, maintenance, and operation of a local telephone system, and hence was not authorized to enter and occupy the streets, alleys, and public grounds without permission from the town, because said article does not include establishing a local telephone system. Texas Telephone Co. et al. v. City of Mart (Tex. Civ. App.) 226 S. W. 497; Athens Telephone Co. v. City of Athens (Tex. Civ. App.) 182 S. W. 42; Id. (Tex. Civ. App.)

163 S. W. 371; City of Brownwood et al. v. Brown Telephone & Telegraph Co., 15, 7 S. W. 1163, 106 Tex. 114.

In the case of Acme Cement Plaster Co. v. American Cement Plaster Co. et al., 167 S. W. 183, this court held:

"The allegations show that the appellees are not such corporations as are given the right of eminent domain or the right to construct and maintain telephone lines over the public highways. Under articles 1231 and 1235, R. S., this court held, in Roaring Springs Townsite Co. v. Paducah Telephone Co., 164 S. W. 50, 'The statute gives the privilege only to corporations created for the purpose of constructing and maintaining telephone lines,' and, if not such a corporation, it should be treated as a trespasser in attempting to construct its line, and the owner of the land would be entitled to an injunction."

See, also, Roaring Springs Townsite Co. v. Paducah Telephone Co., 212 S. W. 147, 109 Tex. 452.

[5] Appellant's assignor was a copartnership, and under these authorities was not authorized to set poles on the streets without the consent of the town, because not a "corporation created for the purpose of constructing and maintaining magnetic telegraph lines." Not having authority from the federal government, nor from the state by statute or charter, it was without the right or privilege to use the streets for its poles and wires unless derived from the consent of the city contained in the franchise ordinance. McQuillin, Municipal Corporations, vol. 4, p. 3377.

[6] Appellant insists that the power to regulate rates charged and collected by public service utilities is inherent in the state, and such power can only be exercised by a municipality when properly delegated to it, and inasmuch as the Legislature has not delegated the authority to regulate the rates charged for telephone service to cities like Clarendon, having fewer than $5,000 inhabitants, appellee is without power or authority to regulate the rates charged and collected for telephone service.

[7] It is so well settled that the state has the innate power to regulate and control the rates of public service utilities that citation of authorities is unnecessary.

It may be conceded that the Legislature has not delegated to cities of less than 5,000 inhabitants power to regulate the rates charged for telephone service by virtue of their governmental capacity or legislative authority.

The city of Clarendon, while not vested with the power to regulate by legislation— which is by enacting ordinances—the rates charged for telephone service within its corporate limits, was and is authorized to make and enter into contracts for the benefit of the city and its citizens.

[8] While the authority to make the franchise contract for local telephone service for itself and its citizens may not be given in express words, it is fairly implied and essential to the declared purpose of modern municipalities because local telephone service is no longer a mere convenience, but it is indispensable to their social life, business communications, commercial transactions, law enforcement, fire alarms, etc. Pensacola Tel Co. v. Western U. Tel. Co., 96 U. S. 1, 24 L. Ed. 708; 26 R. C. L. 478; Jones, Telegraph and Telephone Companies (2d Ed.) par. 23.

The governmental or legislative power of the appellee should not be confused with its right to contract.

Public Utilities, Pond (3d Ed.) p. 16, par. 5, reads:

"The powers of the municipal corporation in its capacity as an agent of the state are well defined and strictly limited by the statutory provisions granting them. There is little or no opportunity here for invoking the doctrine of liberal construction nor for extending its sphere of activity by the doctrine of implied powers. It is the duties of the sovereign that are to be performed in the manner provided by law and its interests alone are to be considered. On the other hand, the municipal corporation in its private proprietary and essentially business or commercial aspect acts as a property owner and the proprietor of a business enterprise for the private advantage of the city and its citizens as a distinct legal personality, and may exercise its business powers very much in the same way as a private individual or corporation. In the erection and operation of gas works, electric light plants, waterworks, and the like, as well as in contracting for such service and in attending to matters of local interest merely for the special benefit and advantage of the city and its citizens, a municipal corporation acts as a business concern."

McQuillin, Municipal Corporations, vol. 4, p. 3699, says:

"The power of a municipality to prescribe the rates of a public service company by contract is to be distinguished from the legislative power to regulate rates."

In volume 7, par. 4473, Fletch. Cyc. Corp., it is stated:

"In other words, a municipality has the right to make a contract with a public service company as to the use of its streets where such use has not been granted by the state itself; and in consideration of granting the use of the streets to such company it may compel it to agree not to charge in excess of certain fixed rates. Such a contract is within the power of the municipality without any express delegation of power, and is binding as to rates, not only upon the municipality, but also upon the company, at least until the state, through its legislative or public service commission, changes the rates. * * *"

"So, a telephone company may be granted the use of streets on the condition that the rate shall not exceed a fixed schedule."

McQuillin, Municipal Corporations, vol. 8, p. 7628, announces the principle thus:

"A municipality acting in its proprietary side as a business corporation, if the state does not interpose, may contract as to rates which will bind it and a public service company, but if it acts by virtue of its delegated powers as a governmental instrumentality or agent of the state, etc., the ordinance is legislative in character and is not impairing the obligation of a contract."

For other authorities, see City of Los Angeles et al. v. Los Angeles Gas & Electric Corporation, 40 S. Ct. 76, 251 U. S. 32, 64 L. Ed. 121; Omaha Water Co. v. City of Omaha et al., 147 F. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; City of Woodburn v. Public Service Commission of Oregon, 161 P. 391, 82 Or. 114, L. R. A. 1917C, 98, Ann. Cas. 1917E, 996.

In the case of City of Uvalde et al. v. Uvalde Electric & Ice Co., 250 S. W. 140, the Commission of Appeals says:

"The functions of municipal corporations, though all of them are of a public nature, may be divided into two great classes according to the purpose and nature of the function or act. They are either governmental functions performed by virtue of power conferred upon the municipality as a legal agency of the state to be exercised in the administration of affairs affecting the people generally or proprietary business powers granted for the special benefit of the urban community embraced within the corporate boundaries."

[9] Appellee, not having been delegated any governmental or legislative power to regulate telephone rates by ordinance, must, in so far as it asserts any rights based on the franchise contract, depend on its authority to contract for the benefit and protection of itself and its citizens.

[10, 11] A municipality cannot barter away or abrogate by contract the police power delegated to it; neither can it abolish the inherent power lodged in the state to regulate rates charged by public service corporations. Article 1, § 17, of the Constitution of Texas, among other things, provides:

"No irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof."

Article 12, § 5, of our state Constitution provides:

"All laws granting the right to demand and collect freights, fares, tolls or wharfage, shall at all times be subject to amendment, modification or repeal by the Legislature."

Under these constitutional reservations, no contract could be made by the city that would not be "subject to the control" of the Legislature, and no rates fixed that would not be "subject to amendment, modification or repeal" by the Legislature.

[12] This franchise contract does not barter away any police power of appellee, for the very good reason that the power to regulate telephone rates by legislation has never been delegated to cities like Clarendon, with less than 5,000 inhabitants, and, hence, appellee could not deprive itself by contract of some power it never possessed. Texarkana Gas & Electric Co. v. City of Texarkana, 123 S. W. 213, 58 Tex. Civ. App. 109.

It is true that in City of Uvalde et al. v. Uvalde Electric & Ice Co., supra, it is held that the city was without authority to make a contract by the terms of which itself and its inhabitants were bound to pay a stipulated rate for electricity for lighting purposes for 10 years. This holding, however, is not in conflict with the conclusion reached in this case, because article 1119, R. C. S. 1925 (article 1018, V. S. C. S.), expressly gives cities and towns in this state of over 2,000 inhabitants, incorporated under the general laws, power to regulate by ordinance the rates and compensation to be charged by water, gas, light, and sewer companies using the streets and public grounds of such city or town; and in undertaking to contract for lights at a stipulated price for a period of 10 years, the City of Uvalde was bartering away the legislative authority delegated to it to regulate rates by ordinance. The above article, it will be noted, does not authorize such cities and towns incorporated under the general laws to regulate by ordinance the rates charged by a telephone company using the streets and alleys of such town, to furnish telephone service, and no law has been called to our attention and we have found none, that delegates to appellee the authority to regulate by legislation the rates charged by appellants.

[13] The Legislature of the state has not enacted any statute controlling the rates charged for local telephone service, nor created any commission with authority to regulate such rates, nor delegated such power to such cities as Clarendon; and the contract between appellee and appellant is subject to the power of the state to change the rates expressed in the contract, if necessary for the public welfare; but until the state, by its Legislature, regulates or delegates power to some other authority to regulate the rates for local telephone service, the franchise contract is valid as between the parties, because it must be held that they contracted with reference to the right of the state to exercise its innate authority to control, amend, modify, or repeal. City of Woodburn v. Public Service Commission of Oregon, 161 P. 391, 82 Or. 114, L. R. A. 1917C, 98, Ann. Cas. 1917E, 996; Louisville & N. R. R. Co. v. Mottley, 31 S. Ct. 265, 219 U. S. 467, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Union Dry Goods Co. v. Georgia Public Service Corp., 83 S. E. 946, 142 Ga. 841, L. R. A. 1916E, 358; Yeatman v. Towers, 95 A. 158, 126 Md. 513; Minneapolis, St. P. & S. Ste. M. R. Co. v. Menasha

W. W. Co., 150 N. W. 411, 159 Wis. 130, L. R. A. 1915F, 732; Portland R., Light & P. Co. v. Railroad Commission, 33 S. Ct. 820, 229 U. S. 397, 57 L. Ed. 1248; Hudson County Water Co. v. McCarter, 28 S. Ct. 529, 209 U. S. 349, 52 L. Ed. 828, 14 Ann. Cas. 560; Benwood v. Public Service Commission, 83 S. E. 295, 75 W. Va. 127, L. R. A. 1915C, 261; State ex rel. Webster v. Superior Ct., 120 P. 861, 67 Wash. 37, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78.

The city of Palatka, Fla., obtained a temporary injunction in the state court restraining the Southern Utilities Company from charging and collecting more for commercial lights than the rate stipulated in the franchise contract with the city. The company moved to dissolve the temporary restraining order on the ground that the rates permitted in the contract under then existing circumstances were unreasonable, confiscatory, and that the city could not enter into a binding contract fixing the rate it charged, because under the Constitution of Florida the Legislature is invested with power to pass and provide for the enforcing of laws against excessive charges in performing services of a public nature. Southern Utilities Co. v. City of Palatka, 99 So. 236, 86 Fla. 583. The ruling of the lower court was affirmed by the Supreme Court of Florida, and the Utilities Company secured a review of the judgment by the Supreme Court of the United States, 45 S. Ct. 488, 268 U. S. 232, 69 L. Ed. 930, and Mr. Justice Holmes, speaking for the Supreme Court of the United States, says that the company contends that there is a lack of mutuality in the contract and it cannot be enforced against it, because, in the absence of such contract, it would be unconstitutional to impose such rates; and continues:

"The argument cannot prevail. Without considering whether an agreement by the company in consideration of the grant of the franchise might not bind the company in some cases, even if it left the city free, it is perfectly plain that the fact that the contract might be overruled by a higher power does not destroy its binding effect between the parties when it is left undisturbed. Georgia Railway & Power Co. v. Decatur, 43 S. Ct. 613, 262 U. S. 432, 438, 67 L. Ed. 1065; Opelika v. Opelika Sewer Co., 44 S. Ct. 517, 265 U. S. 215, 218, 67 L. Ed. 983 [985]. Such a notion logically carried out would impart new and hitherto unsuspected results to the power to amend the Constitution or to exercise eminent domain. There is nothing in this decision inconsistent with Southern Iowa Electric Co. v. Chariton, 41 S. Ct. 400, 255 U. S. 539, 65 L. Ed. 764, San Antonio v. San Antonio Public Service Co., 41 S. Ct. 428, 255 U. S. 547, 65 L. Ed. 777, and Ortega Co. v. Triay, 43 S. Ct. 44, 260 U. S. 103, 67 L. Ed. 153."

[14] The record is conclusive that the owners of the Clarendon Telephone & Telegraph Company entered, erected, and for years maintained in Clarendon the local telephone system by virtue of the rights and privileges granted to them in the franchise contract, and that appellant acquired the properties and the franchise from them; hence, he is not in a position to assail, as invalid, the contract under which he occupies the streets and alleys and carries on his business. Texas Telephone Co. et al. v. City of Mart (Tex. Civ. App.) 226 S. W. 497; City of Terrell v. Terrell Electric Light Co. (Tex. Civ. App.) 187 S. W. 966; City of St. Mary's v. Hope National Gas Co., 76 S. E. 841, 71 W. Va. 76, 43 L. R. A. (N. S.) 994; Fletch. Cyc. Corp. vol. 7, par. 4474; 26 C. J. p. 1029, par. 60; McQuillin, Municipal Corporations, vol. 4, p. 3570, par. 1688.

[15] Appellant challenges the constitutionality of article 1125, R. C. S. 1925 (article 1025, V. S. C. S.), etc., giving to the district courts authority to regulate and fix rates, and providing the procedure therefor, because the regulation of rates belongs to the legislative and not to the judicial branch of government; but this contention becomes immaterial in this case, for the reason that, independent of this statutory authority, the court had jurisdiction under its general equity power to restrain appellant from charging and collecting unreasonable rates for telephone service which constituted a violation of its franchise contract.

[16] The record discloses that the rates prescribed in the original franchise ordinance were charged and collected until 1918, at which time by a resolution passed by the city the rates were increased to $2 per month for each residence telephone and $3 per month for each business telephone, and that, notwithstanding this resolution was some time thereafter repealed, the telephone company continued to charge this increased rate until about December 1, 1925, when the rates were arbitrarily increased by the appellant to $2.50 per month for residence phones and $4 per month for business phones; that on April 1, 1922, the owners of the telephone company, before its acquisition by appellant, secured an extension of the life of the franchise for an additional period of 25 years; that on December 8, 1925, after appellant had begun charging rates in excess of the increase permitted by the resolution, which had been repealed, the city passed an ordinance stipulating the same rates as were prescribed in the resolution; however, the city had not been delegated the power to regulate rates in its governmental capacity, hence, as a legislative measure, this ordinance was void, and as appellant refused to accept or acquiesce in its validity, it is not enforceable as a contract.

[17] The record fails to disclose whether the rates prescribed in the original franchise were carried into the extension thereof for an additional period of 25 years or whether it was contemplated at the time this extension was secured the rates should be as per-

mitted in the resolution. In fact, the pleading and proof fail to reveal that in granting the extension of the franchise rates were considered. In view of the uncertainty as to the exact contractual relations existing at this time between the litigants, and the temporary writ restraining appellant from collecting more than $2 per month for each residence phone and more than $3 per month for each business phone, it would appear that the court was undertaking to enforce the rates authorized by the ordinance passed on December 8, 1925, and as the ordinance was invalid, it could not form the basis for the temporary injunction.

[18] The suit was instituted and prosecuted by the "city of Clarendon," but it appears to have been incorporated under the name of the "town of Clarendon," and we suggest that this discrepancy be corrected in future proceedings.

We think the municipality had the right to institute and maintain the suit in its own proper name.

The judgment is reversed, and the cause remanded.