GENERAL TELEPHONE COMPANY OF
the SOUTHWEST, Appellant,

v.

CITIES LITTLEFIELD et al., Appellees.

No. 8373.

Court of Civil Appeals of Texas,
Amarillo.

July 23, 1973.

Rehearing Denied Sept. 9, 1973.

Preston, Ray, Holt & Goodrum (Hubert M. Preston), San Angelo, for appellant.

Kirby, Ratliff & Sansom (Ted L. Sansom), Littlefield, for appellees.

JOY, Justice.

This is a telephone rate case. General Telephone Company of the Southwest, appellant, brought this appeal from a judgment granting a temporary injunction favorable to the cities of Littlefield, Amherst, and Anton, appellees. This injunction prohibits appellant from increasing rates for telephone service furnished to subscribers living within the corporate boundaries of the cities. Affirmed.

The record discloses that Littlefield is a duly incorporated home rule city in Lamb County, Texas, and Anton and Amherst are general law cities, situated in Hockley and Lamb Counties, respectively. Appellant furnishes these cities with what is commonly referred to as "extended area service." Basically, the service provides individual subscribers with purely local telephone service, as well as the privilege of making an unlimited number of toll-free calls between the cities, for a single monthly rate; however, subscribers in Anton and Amherst cannot place toll-free calls between those two cities. In addition, subscribers in the city of Littlefield are able to make toll-free calls to subscribers in the cities of Spade and Whitharral. By letter dated December 26, 1972, Mr. E. R. Richardson, appellant's district manager, notified appellees that rates for the extended area service would be increased effective January 15, 1973. The cities brought this suit for a temporary injunction to enjoin appellant from placing the proposed rate increase in effect. Appellant answered, contending the cities had no rate making

jurisdiction over the type service in question. Appellant, in the alternative, contended that if the cities were found to have such jurisdiction, the rates then in existence which had been approved by appellees' city commissioners were so low as to deprive appellant of its right to earn a fair return on its investment. Appellant prayed for an injunction prohibiting appellees from interfering in any way with appellant's collecting a fair rate of return.

The cause was tried without a jury. The trial court, after hearing the evidence, found appellees to have jurisdiction over the type rate involved and granted the cities a temporary injunction restraining appellant from charging the proposed increased rates to resident subscribers. In support of this order, the trial court found that the cities having such jurisdiction had previously rejected the proposed rate increase. The court found no evidence, or in the alternative, insufficient evidence, that the rates in existence subjected appellant to confiscation of its property. The court found sufficient evidence that the rates in existence yielded appellant a fair rate of return.

Appellant brings this appeal on two points of error. By its first point, appellant contends the trial court erred in granting the cities' request for a temporary injunction and denying appellant's request for a temporary injunction because the rates for extended area service were not within the jurisdiction of the cities, and consequently, the appellant was not required to obtain the cities' approval before placing the same in effect.

Appellant bases its argument upon two cases: City of Carrollton v. Southwestern States Tel. Co., 381 S.W.2d 401 (Tex.Civ. App.—Eastland 1964, writ ref'd n. r. e.) and City of Weslaco v. General Telephone Co. of S.W., 359 S.W.2d 260 (Tex.Civ. App.—San Antonio 1961, writ ref'd n. r. e.). In both the *Carrollton* and *Weslaco* cases the court held the cities had no regulatory jurisdiction over intrastate telephone rates. Appellant argues the extended area

service furnished subscribers in this case is intrastate in nature; consequently, appellees have no jurisdiction to regulate the rates for such service. A careful examination of the record reveals a substantial distinction between the situation reported in this case and those reported in the *Weslaco* and *Carrollton* cases, and necessitates a different result from those reached therein.

In *Weslaco* the trial court permanently enjoined the city from enforcing the terms of a long distance rate regulatory ordinance. The telephone company contended that (1) the local rates were confiscatory; and (2) that the city had no authority to regulate charges for intrastate long distance calls. The court held that while local service was dependent upon a franchise, hence subject to municipal regulation, intrastate service was not, and the city had no jurisdiction to regulate intrastate long distance telephone rates. In *Weslaco* there was a separation between the purely local rate regulation and the long distance intrastate regulation, whereas, in the present case, the extended area service was a combined type service with no distinction being made between purely local and extended area service. A thorough perusal of the record in this case reveals no attempt to segregate the two types of service or their rates bases, so the system must be treated as a single unit for regulatory purposes.

In the Carrollton case the city brought suit for a temporary injunction which would have prohibited the telephone company from putting into effect new and increased rates for extended area telephone service between the city of Carrollton and the city of Dallas, Texas. The court in that case, citing *Weslaco*, reiterated the principle that a city has no authority to regulate intrastate telephone rates and refused to grant the city's request for an injunction. (It should be noted, however, that the judgment in no way affected the authority of the city to regulate purely local service.) The extended area service involved in the Carrollton case was optional in the sense that a subscriber might sub-

scribe to purely local service without subscribing to the extended area service. Appellant argues that in the Carrollton case, the intrastate Dallas service, once it was purchased, included purely local service and this did not alter the court's decision in denying the city regulatory authority over the combined or extended area service.

Appellant contends that the fact that the extended area service in this case was not optional, but that the system included purely local service, should have no bearing on a decision of this court in denying the cities' rate making jurisdiction. Appellant argues, in effect, that by accepting the integrated extended area service, the cities, as they have no rate making authority over such service, relinquished their authority to establish rates for the purely local service. An examination of the record in this case reveals that prior to the institution of extended area service, the cities adopted amendments to the telephone franchise ordinances, which provided for the institution of such service, wherein Clause 18 provided that it was *"mutually understood and agreed" that the rates to be charged for the extended area service in lieu of strictly local service would be fixed and regulated by the governing bodies of such cities,*[1] provided such rates would be sufficient to provide the telephone company with a fair rate of return on its property used and useful in the rendition of telephone service to subscribers in such cities. The court in neither the *Carrollton* nor the *Weslaco* case was confronted with the type of integrated system found herein, nor with an agreement which reserved regulatory authority of extended area service to the city. We consider the rule announced in *Carrollton* and *Weslaco* that a city has no rate making authority over intrastate rates is inapplicable to the present situation. A rule better adapted to the situation in this case is that a municipal corporation may, in granting a telephone franchise, insert into such grant provisions of a general nature as to rates to be charged by the telephone company for its services, and when such company accepts such a provision, it becomes bound thereby. See cases cited at 86 C.J.S. Tel. & Tel., Radio & Television § 83(a), p. 102. The court in the case of Texas Telephone Co. v. City of Mart, 226 S.W. 497 (Tex.Civ.App.—Austin 1920, no writ) held:

> "Though the city may have had no right to fix by ordinance the rates to be charged by a public service corporation which had theretofore obtained a franchise to conduct its business in such city without restriction . . . yet when such corporation applies for a franchise . . . the city having the right to refuse such franchise, if the same is granted by ordinance in which rates for service are fixed, and the corporation accepts the benefits of such franchise, such facts amount to a contract. . . ."

The same general rule was expressed in the case of Fink v. City of Clarendon, 282 S.W. 912 (Tex.Civ.App.—Amarillo 1926, no writ) in the following language:

> "The record is conclusive that the owners of the Clarendon Telephone & Telegraph Company entered, erected, and for years maintained in Clarendon the local telephone system by virtue of the rights and privileges granted to them in the franchise contract, and that appellant acquired the properties and the franchise from them; hence, he is not in a position to assail, as invalid, the contract under which he occupies the streets and alleys and carries on his business."

Appellant contends that Clause 18 of the franchise amendment does not confer regulatory authority over extended area service to the cities. It argues that Clause 18 provides that the cities' rate making authority over extended area service is to be "in accordance with the statutes and laws of the

---

1. Emphasis ours unless otherwise noted.

State of Texas"; appellant contends the statutes and laws of Texas do not confer such authority to the cities, consequently, the clause neither adds to nor subtracts from the cities' regulatory authority. After an exhaustive search, we find nothing in the laws or statutes of the State of Texas which is incompatible with a contractual assumption by a city of the type of rate making jurisdiction involved here. There is no legislative regulation of intrastate telephone rates at the present time, and absent such regulation, the telephone company itself may establish reasonable intrastate rates. Southwestern Bell Tel. Co. v. Houston Ind.Sch.Dist., 397 S.W.2d 419 (Tex.1965). The court in Fink v. City of Clarendon, supra, held:

> "The city of Clarendon, while not vested with the power to regulate by legislation—which is by enacting ordinances —the rates charged for telephone service within its corporate limits, was and is authorized to make and enter into contracts for the benefit of the city and its citizens."

Applying the foregoing principles, we hold the city, while it requested the extended area service, was under no obligation to accept such service and could freely bargain and contract with the telephone company for the service. Absent some legislative enactment which would pre-empt other regulatory control, the agreement which provided for city regulation of the extended area service (which included the purely local service) and which was voluntarily entered into was a valid exercise of the cities' contractual authority. Once the appellant accepted the ordinances/agreements, and instituted the extended area service thereunder, it became bound thereby. The telephone company cannot now deny the regulatory authority which they have previously agreed to and accepted. Appellant's first point is overruled.

■ Appellant's second point of error is the trial court abused its discretion in denying appellant's request for a temporary injunction because the sworn pleadings and the record show that appellant is suffering daily irreparable confiscation under existing rate ordinances. Appellant cites the case of Bluefield W. W. & Improv. Co. v. Public Service Com., 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1922) as authority for the proposition that a public utility is entitled to earn a rate of return on its investment that is equal to that generally being made at the same time and in the same general area of the country on investments made by other corporations having the same risks and uncertainties. A public utility will be granted a temporary injunction in a case involving rates provided it can show there is a reasonable probability that it will succeed on final hearing, that the loss to the utility resulting from the refusal to grant the temporary injunction will be irreparable and that the customers can be adequately protected by bond. City of Baytown v. General Tel. Co. of the Southwest, 256 S.W.2d 187 (Tex.Civ.App. —Galveston 1953, writ ref'd n. r. e.). The trial court in this case specifically found that the evidence showed the extended area service rates in effect at the time of trial yielded appellant a fair rate of return. The record, on appeal, must be considered most favorably to the trial court judgment either granting or refusing to grant a temporary injunction as such is within its sound discretion and its action will not be disturbed on appeal unless it clearly appears from the record that there has been an abuse of that discretion. See cases collated at 31 Tex.Jur.2d Injunctions, § 224, p. 345. In order to determine whether or not the trial court abused its discretion it is necessary to review the record.

■ Both appellant and appellees introduced voluminous testimony as to what a fair rate of return for appellant should be, what appellant's rate of return was under the existing rates, and what the rate of return would be if the proposed rates were placed into effect. It is unnecessary to restate all such testimony in this opinion. Appellant's witnesses testified that the rate of return on its property under the existing rates was 2.65%, whereas under the

proposed rates, the rate of return would be 7.96%. Appellees' witness, Mr. Mc-Morries, testified that appellant's rate of return under the existing rates was 7.16%, whereas the rate of return under the proposed rates would be 14%. In addition, there is evidence that the courts have allowed rates of return between 6.95% in Indiana to a rate of 9.69% in Minnesota. Furthermore, Mr. McMorries testified that he was familiar with the range of fair rates of return for utilities in Texas, and they ranged from 6.75% to 8%. The trial judge, as trier of the facts, is the sole judge of the credibility of witnesses and weight to be given testimony. He has the right to believe or disregard evidence. Pecos Mining Company v. Richardson, 318 S.W.2d 3 (Tex.Civ.App.—Amarillo 1958, no writ). We hold there to be sufficient evidence from which the trial court could find that appellant was receiving a fair rate of return on its investment and therefore hold, in accordance with the above cited authority, there to be no abuse of discretion. Appellant's second point is overruled.

The judgment of the trial is in all things affirmed.