CITY OF HOUSTON, Appellant,

v.

WILLOW BEND UTILITIES, INC., et al.,
Appellees.

No. 13535.

Court of Civil Appeals of Texas.

Houston.

Jan. 14, 1960.

Rehearing Denied Feb. 4, 1960.

R. H. Burks, City Atty., John Gano, Senior Asst. City Atty., Charles F. Weaver, Asst. City Atty., Houston, for appellant.

Paul Strong, Houston, for appellee.

BELL, Chief Justice.

This case originated in a petition filed by appellees by which they sought to enjoin the City of Houston from requiring them to hold a rate hearing affecting rates to be charged by them for water, sewer and garbage service before an examiner appointed pursuant to an ordinance of the City, appellees contending they were entitled to a hearing before the City Council. The appellant filed a cross-action in which it sought to enjoin appellees from putting into effect a new rate schedule promulgated by appellees, contending that appellant had by ordinance No. 57–531 adopted a rate schedule promulgated by appellees and such became the only valid rate that could be charged by appellees until after a rate hearing. Appellees attacked the validity of such ordinance because of want of notice to them before its passage.

The trial court, after a hearing, refused all relief. Appellees have not appealed, but appellant has appealed, complaining of the action of the trial court in refusing to enjoin appellees from charging rates in excess of those fixed by ordinance No. 57–531, passed May 1, 1957.

Appellees are private utilities, rendering water, sewer and garbage service to certain areas that lay beyond the limits of the City of Houston prior to December 31, 1956. The territory served by them became a part of the City of Houston as a result of annexation on the last mentioned date.

On January 2, 1957 the City Council passed ordinance No. 57–1 by which it fixed water rates and charges for furnishing water connections at those prescribed by the ordinances of the City of Houston passed in August, 1956. The rates so fixed were substantially less than were being charged by appellees under their rate schedule. On the same day by ordinance No. 57–3 the City Council fixed the charge for sewer service at an amount less than was being charged by appellees under their schedule of rates.

Thereafter, on January 18, 1957, appellees furnished appellant certain information required by the ordinances of January 2, 1957, relating to the value of their plant and at the same time protested the two ordinances, denied their validity and requested a hearing, of which they should be given notice, and at which Council should fix rates giving them a return of 7% on the replacement value of their properties.

Nothing further was done by either appellant or appellees until May 1, 1957. On this last mentioned date the City Council passed ordinance No. 57–531, which pro-

vided that no private utility, without franchise from the City, furnishing water, sewer or garbage service, should charge any greater rate than that being charged by it on December 31, 1956. The ordinance recites that the Council presumes the rates voluntarily established by the utilities are fully compensatory and takes notice that there has been no such general increase in prices as to make such rates noncompensatory. The ordinance then provided that any utility dissatisfied with the rate would be given a hearing upon application of such utility.

■ By ordinance No. 57–530, the City Council on May 1, 1957, repealed ordinances Nos. 57–1 and 57–3. These two ordinances were clearly invalid because they reduced appellees' rates without a hearing after notice and thus procedural due process was not observed.

Appellees were given no notice that this ordinance No. 57–531 was to be passed or that it had been passed. The effect of the ordinance of May 1, 1957, was to adopt the schedule of rates voluntarily promulgated by appellees in 1955 and which had continuously been charged by them since they were first put into effect. Following the adoption of the ordinance of May 1, 1957, nothing was done by appellees or appellant, but appellees continued to charge the rates they voluntarily adopted and which the City adopted by the aforesaid ordinance.

On May 1, 1959, two years after the passage of ordinance No. 57–531, appellees asked for a rate hearing. On July 7, Council set a hearing before an examiner for July 30.

It might here be briefly noted that we do not have before us the validity of the ordinance providing for a hearing before an examiner, because appellees did not appeal from the court's judgment denying the relief they asked.

On July 15, 1959, appellees promulgated a new schedule of rates which represented an increase in the rates for services to be rendered. Appellees were charging these increased rates and the testimony showed they would continue to do so unless enjoined.

Appellant contends the trial court abused its discretion in refusing to grant a temporary injunction because the undisputed evidence shows that appellees are charging, and, unless enjoined, will continue to charge their customers rates in excess of those fixed by ordinance No. 57–531 and fixed by contract between the utilities and their customers.

Appellees contend there was no abuse of discretion because ordinance No. 57–531 was invalid since they had been given no notice that it was to be passed and no hearing was had, and this denied them due process of law. Too, they say there was no abuse of discretion because appellees had not been granted a rate hearing for over two years, they having requested one on January 18, 1957. They say also that ordinance No. 57–531 was repealed by ordinance No. 59–1078.

■■ We have reached the conclusion that we cannot say the trial court abused its discretion in refusing to grant appellant's application for a temporary injunction enjoining appellees from charging rates in excess of those they were charging on December 31, 1956, the latter being allegedly fixed by ordinance No. 57–531, for the reason that the trial court could have concluded that the request of appellees of January 18, 1957 was a request for a general rate hearing to determine a rate that would be compensatory to them. The effect of such request is to express dissatisfaction with the rate fixed by ordinances Nos. 57–1 and 57–3, but also with the rates they had themselves fixed prior to the time their properties were brought into the City of Houston. At least, the request is subject to such a construction. There being no findings of fact, we must presume the court found them in a manner so as to support the judgment, there being evidence to support such a conclusion.

**336**

Where a regulatory body proposes to fix a rate to be charged by a utility for its services different from that to which the utility in some manner agrees, procedural due process requires that the utility receive notice and be granted a hearing. Highway Transportation Co. v. Southwestern Greyhound Lines, Tex.Civ.App., 124 S.W.2d 433; Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

It is true in this case that appellees continued for two years after May 1, 1957, to charge the old rate, but we are unable to say that in the light of the pending request for a hearing for the purpose of fixing a rate the trial court abused its discretion in presumably finding that the utility had not agreed to an adoption of the old rate by the City.

We do not deem it of significance, as suggested by appellant in its reply brief, that appellees are operating without a franchise from the City. While it has been held that the City may require a removal of the utility's properties from the City if it has no franchise, it may not, while allowing the utility's properties to be devoted to public use, require it to render services at noncompensatory rates. Detroit United Ry. Co. v. City of Detroit, 248 U.S. 429, 39 S.Ct. 151, 63 L.Ed. 341. While in our case we do not determine, as the record does not cover the matter, whether the rates are noncompensatory, the same rule as to procedural due process applies to the fixing of rates for a utility allowed to operate without a franchise as applies where the utility has a franchise.

Neither do we deem it of significance, in a suit brought by the City, that the utility may have been charging its customers rates greater than provided by contract between the utility and the customer. The utility denies it is doing so, but assuming it is violating its contract with customers, this would merely give them cause to complain and not the City.

Being of the opinion that we cannot say the trial court abused its discretion in presumably determining that appellees had not agreed to the fixing of their rates by the City without notice and a hearing, ordinance No. 57–531 would, as applied to appellees, be invalid because they were denied due process of law.

The judgment of the trial court is, therefore, affirmed.