The CITY OF HOUSTON, Appellant,

v.

GLEN OAKS UTILITIES, INC., et al., Appellees.

No. 13983.

Court of Civil Appeals of Texas.

Houston.

Sept. 20, 1962.

Rehearing Denied Oct. 11, 1962.

R. H. Burks, City Atty., John Gano and Charles F. Weaver, Senior Asst. City Attys., Houston, for appellant.

Dow & Dow, Melvin Dow, Edmund L. Cogburn, Houston, for appellees.

COLEMAN, Justice.

This is an appeal from the judgment of the District Court of Harris County, Texas, rendered on motion for summary judgment, permanently enjoining the City from attempting to enforce the provisions of three ordinances regulating the rates to be

charged by the public utility companies, appellees herein.

The trial court's action was based on his conclusion that the undisputed facts revealed that insofar as appellees were concerned, the ordinances in question were void because the City failed to give to the appellees notice and an opportunity to be heard before the enactment of the ordinances in violation of the due process provisions of the Constitutions of Texas and of the United States of America.

The City does not contend that notice or opportunity to be heard was afforded appellees prior to the enactment of Ordinance Nos. 57–531 and 59–1078. It contends that these were ordinances of general application to numerous companies engaged in the business of furnishing water, sanitary sewer service or garbage pick-up service within the City without franchises and that notice and hearing to those affected by the ordinances are not constitutional requirements.

▆ The Supreme Court of Texas, in a former appeal in this same case, Glen Oaks Utilities, Inc. v. City of Houston, 161 Tex. 417, 340 S.W.2d 783, stated that, "It is settled law that procedural due process requires that a rate-fixing body give due notice to the utility involved and grant a hearing before enacting an ordinance." This general statement of the law is applicable here. The effect of the ordinances under discussion is to set the maximum rates which the utilities could charge. It is implicit in the rule of law stated in the case cited that the utility has a legally protected right to set the rates at which it will furnish commodities or services. It can be deprived of this right by a rate-fixing body only if that body in exercising its authority does so with proper regard to those safeguards against arbitrary conduct which the courts have determined are required by "due process of law." Old Dearborn Distributing Co. v. Seagram-Distillers Corporation, 299 U.S. 183, 57 S. Ct. 139, 81 L.Ed. 109; United States v.

Illinois Cent. R. Co., 291 U.S. 457, 54 S. Ct. 471, 78 L.Ed. 909; Eldridge v. Fort Worth Transit Company, 136 S.W.2d 955, Tex.Civ.App., writ dism.; City of Houston v. Willow Bend Utilities, Inc., 331 S.W.2d 333, Tex.Civ.App., writ ref., n. r. e. The fact that the City attempted to regulate the rates to be charged by a number of companies in one ordinance cannot deprive the companies affected of these constitutional safeguards.

The evidence shows that Ordinance No. 59–996 was enacted in 1959 about two years after the conclusion of a rate hearing of which the companies had notice and in which they participated. At the conclusion of these hearings no rate ordinance was passed by the City. It is undisputed that evidence not available in 1957 was considered by the City in arriving at the rates finally included in the ordinance. This evidence was not presented at a meeting of which the companies were given formal notice.

The Supreme Court of the United States has held that "a fair and open hearing is one of the rudiments of fair play * * *" which "must be accorded as an inexorable safeguard, * * *" and that "there must be due notice and an opportunity to be heard, * * *." Railroad Commission of California v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 322. In Ohio Bell Telephone Company v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, the Supreme Court of the United States said: "The fundamentals of a trial were denied to the appellant when rates previously collected were ordered to be refunded upon the strength of evidential facts not spread upon the record. * * * This is not the fair hearing essential to due process."

▆ The attorney representing the companies testified by affidavit that he was told by Mr. Clinton Owsley, Director of Public Service of the City of Houston, at a conference on July 14, 1959, that the City had to get the ordinance enacted

before July 20, 1959, on which date a motion for summary judgment was set down for hearing. He was shown a copy of an ordinance substantially similar to Ordinance 59–996 that was introduced and finally passed on July 17, 1959. In Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, the Court said:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case.*" (Italics added.)

Clearly the notice here given was not appropriate to the nature of the case. While the reasonableness of any notice given would ordinarily be a question of fact, here no evidence was produced that Mr. Owsley was acting by direction of, or under authority granted by, the rate-making body. The affidavit is not evidence of notice of anything more than that Mr. Owsley considered it necessary that the ordinance be passed prior to July 20, 1959. This would not constitute notice by the rate-making body that it would take up the matter of rates and afford appellees the opportunity to be heard.

After this case was reversed and remanded for trial by the Supreme Court in Glen Oaks Utilities v. City of Houston, supra, appellees amended their petition by eliminating all allegations that the rates set by the ordinances under attack were confiscatory and that substantive due process was denied them. Evidence submitted in connection with the answer to the motion for summary judgment establishes, in the absence of evidence to the contrary, that the rates would produce an adequate return and are not confiscatory. The City therefore, contends that appellees were not entitled to the permanent injunction since they have suffered no injury. .

In the previous appeal of this case, the Supreme Court, after stating that due process required notice and hearing, said: "Justice requires that a court must have authority to go behind an ordinance which is valid on its face and inquire into the facts surrounding its enactment; otherwise the utility would have a right without a remedy." The Court also said that if the rates fixed by the ordinance are so low as to be confiscatory, the ordinance is void. We construe this opinion to mean that if either procedural due process or substantive due process was denied appellees by the ordinance in question, the ordinances were void. Our interpretation of this opinion is strengthened by the fact that a writ of error was refused, n. r. e., in City of Houston v. Willow Bend Utilities, Inc., 331 S.W.2d 333, Tex.Civ.App., where we held Ordinance No. 57–531 void for want of notice and opportunity to be heard although no evidence was introduced concerning the adequacy of the rates permitted by the ordinance. Substantive due process is not denied so long as the rates permitted yield an adequate return. There would be no useful purpose served in alleging and proving denial of procedural due process, if, to secure injunctive relief, the complainant must also allege and prove denial of substantive due process. While the opinion points out that before a *temporary* injunction may issue facts must be developed showing that the ordinance is void and that the complaining party is suffering immediate injury, the present appeal is from a judgment granting a permanent injunction. Since we consider ourselves bound by Glen Oaks Utilities, Inc. v. City of Houston, supra, as we have interpreted that opinion, no useful purpose would be served by discussing other authorities cited to us.

Appellants seriously assert:

" * * * that 'due process of law' does not concern the questions of notice, opportunity to be heard, or hearing, unless the Legislature has, *by statute,* provided that notice, opportuni-

ty to be heard, or hearing, shall be prerequisite to the enactment of rate ordinances; \* \* \* that the Legislature of the State of Texas has not provided that notice, opportunity to be heard, or hearing, are prerequisite to the enactment of rate ordinances; \* \* \* that the only test of a valid utility rate ordinance (other than gas utilities) in the State of Texas is the substantive test and statutory injunction imposed by the Legislature that rates shall be based upon the fair value of the property devoted to furnishing service, and not upon any stocks or bonds or other indebtedness of the utility; \* \* \* that the due process provisions of the State and Federal Constitutions are satisfied by the statutory substantive test in Texas as aforesaid, since any utility rate ordinance failing to meet the test may be either reformed by the regulatory body or set aside upon a trial held in a court proceedings wherein the rate is properly attacked as being violative of the substantive test imposed; \* \* \*."

All of these points were denied by the Supreme Court of Texas in Glen Oaks Utilities v. City of Houston, supra, and we are bound by that decision. See also Francisco v. Board of Dental Examiners, 149 S.W.2d 619, Tex.Civ.App., error ref.; San Saba County Water Control & Improvement District No. 1 et al. v. Sutton, 12 S.W.2d 134, Tex.Com.App.; State of Texas ex rel. Merriam v. Ball, 116 Tex. 527, 296 S.W. 1085.

The hearing provided by suit for injunction is not sufficient to satisfy the constitutional requirement since the ordinances go into effect immediately and are effective during the trial unless a temporary injunction is granted, in which event the complainant would be required to post bond to cover damages sustained during trial if he was unsuccessful. The opportunity to be heard should be granted before the rates become effective. The hearing before the court will not establish a rate.

In the event the court determines that the rate is inadequate it is not authorized to determine what rates would be adequate. It follows that if a suit for injunction is a substitute for notice and opportunity to be heard by the rate-making body, then the requirement of procedural due process is meaningless.

Appellant alleged certain affirmative defenses summarized under its Point Five, as follows: (a) Appellees have accepted and consented to the rate ceilings fixed in Ordinance No. 59–996; (b) Appellees have waived any complaint by them of Ordinance No. 59–996, or the rate ceilings fixed thereby; (c) Appellees are estopped to complain of Ordinance No. 59–996, or the rate ceilings fixed thereby; (d) Appellees have failed to pursue or exhaust their administrative remedy prerequisite to suit attacking Ordinance No. 59–996, or the rate ceilings fixed thereby; (e) Appellees have an adequate remedy at law; and (f) Appellees do not come into court in this proceeding with clean hands. The City contends that fact issues with reference to each of the ordinances attacked were raised by the evidence as to each of these special defenses.

We find no evidence of any action taken, or communication made, by appellees before the ordinances in question were passed which could be the basis of these defenses. It is contended that the issues were raised by evidence that appellees failed to appeal from a judgment temporarily enjoining them from charging rates in excess of those set by Ordinance No. 57–531 and that after the passage of Ordinance No. 59–996 the companies raised their rates to the maximums permitted by that ordinance. The fact that the City found it necessary to compel compliance with Ordinance No. 57–531 would negative "consent," and we see nothing in the evidence raising the issues of waiver or estoppel. During the interval between the enactment of Ordinance No. 57–531 and Ordinance No. 59–996, the lawsuit was pending, the City Council held a rate hear-

ing, negotiations were being conducted between the City and the utility companies for purchase and sale, and finally the utilities wrote several letters requesting renewed hearings or the passage of a rate ordinance in order that it could either be accepted or attacked in court. The counsel for the utilities told Mr. Owsley that the terms of Ordinance No. 59–996 were not acceptable and soon after its enactment this suit was filed. The requests for rate hearings did not comply with the requirements of the ordinances in question, but they were received and acted on by the City. This failure to comply is consistent with the position of the utilities that they had not been validly subjected to regulation. No evidence has been called to our attention, nor have we found any, suggesting that either of these defenses is applicable to Ordinance No. 59–1078. We have found no evidence suggesting that appellees have intentionally relinquished known rights, or that either of the ordinances conferred any benefit on appellees of which they availed themselves. While we do not question the authority of the cases cited by appellant, we do not consider them applicable under the facts of this case.

Appellant suggests that the summary judgment was improper for the reason that appellees have failed to pursue or exhaust their administrative remedies. This argument was rejected by the Supreme Court of Texas in the previous appeal of this case. It is argued, however, that the decision of the Supreme Court is inapplicable under the facts developed since the appellees failed to show that they have been injured by any of the ordinances. Since appellees, in the absence of regulation, may set any reasonable rate, illegal interference with this right constitutes injury. The Memorial Bend case, supra, is not applicable since appellees have never been validly subjected to regulation, if their attack on these ordinances is successful. There is no rate promulgated by law to be changed unless it is the rate fixed by one of these ordinances.

Appellees are required by law to furnish services to citizens in the area served by them. Threatened enforcement of these ordinances constitutes unlawful interference with the contract rights of the utilities and their customers. "When the right of lawful use and enjoyment of private property will be injuriously affected by the threatened enforcement of a void ordinance, such enforcement will be enjoined." City of Kermit v. Spruill, 328 S.W.2d 219, Tex.Civ.App., err. ref., n. r. e.

For the reasons just stated we conclude that the defense of "adequate remedy at law" is inapplicable. Appellant says appellees may secure a variance in its rates by following the procedures provided in the ordinances. It is our opinion that the City cannot freeze the rates which appellees have voluntarily set without affording them notice of a meeting of the City Council at which they would be given an opportunity to be heard on the proposed ordinance. In such case the procedures required by the ordinances to obtain consent of the City to changes in rates would also be invalid since no consent is required of an unregulated business. Regulation of rates by ordinances adopted without regard to safeguards required by "due process" can neither be attained directly, nor accomplished indirectly. City of Dallas v. Love, 23 S.W.2d 431, Tex.Civ.App.

That appellees have resisted the regulation of their rates by ordinances enacted without their having had an opportunity to be heard and offer testimony is no evidence of conduct of such character as to justify appellant in invoking the maxim "He who comes into equity must come with clean hands." Nor do we find other evidence which would do so.

We recognize that the summary judgment procedure may not be invoked where there are genuine issues of material fact and, then, only when movant is entitled to judgment as a matter of law, that the burden of demonstrating lack of genuine issue of material fact is upon movant

and all doubts should be resolved against him. Here we are convinced that there are no genuine issues of material fact.

The judgment of the trial court is affirmed.