CITY OF CARROLLTON et al., Appellants,

v.

The SOUTHWESTERN STATES TELE-PHONE COMPANY, Appellee.

No. 3883.

Court of Civil Appeals of Texas.

Eastland.

July 17, 1964.

Rehearing Denied Aug. 14, 1964.

Saner, Jack, Sallinger & Nichols, R. L. Dillard, Jr., Dallas, for appellants.

J. Edward Johnson, Brownwood, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

COLLINGS, Justice.

The City of Carrollton brought suit for a temporary injunction against The Southwestern States Telephone Company, seeking to enjoin the defendant from putting into effect new and increased telephone rates for certain classes of service without first submitting for approval or obtaining the approval and authorization of the City Council of plaintiff city for such a rate increase. The defendant telephone company filed an answer alleging that it had the right and power to place into effect the increase in rates for optional service between Carrollton and the City of Dallas and in the alternative

defendant by way of cross action sought a temporary injunction restraining the City of Carrollton from interfering with its efforts to institute such a rate increase.

The trial was before the court without a jury. The court overruled the plaintiffs' plea in abatement to the cross action of the telephone company, dissolved the temporary restraining order which had been granted to the city without notice, and refused the application of the city for a temporary injunction, holding as a matter of law that the City of Carrollton had no jurisdiction over the Dallas service. The court also temporarily enjoined the City of Carrollton from interfering with the defendant telephone company in promulgating and collecting reasonable rates for the Dallas service. Such temporary injunction was conditioned upon the filing by the defendant of a refunding bond for the protection of telephone subscribers within the city in the amount of $125,000.00. The judgment did not enjoin plaintiff city from enforcing its rate ordinance insofar as local service was concerned. The City of Carrollton and the members of its City Council have appealed.

Appellants present points contending (1) that the court erred in denying the request of the City of Carrollton for a temporary injunction restraining appellee telephone company from putting into effect an increase in rates without first complying with the requirements of the Charter of the City and in violation of the ordinances of the city (2) erred in overruling appellants' plea in abatement to the cross action filed by appellee telephone company because the company had not exhausted its administrative remedy by first presenting the proposed rate increase to the City Council as required by the City's Home Rule Charter (3) erred in granting the telephone company a temporary injunction because (a) same was not authorized under the law or evidence and there was no evidence of a reasonable probability that the telephone company will succeed upon final hearing, (b) because the undisputed evidence showed that the telephone company agreed that the rates in Carrollton for "Dallas Service" would be the same as the rates for "Dallas Service" furnished to the City of Irving, and the rates sought to be put into effect for such service are in excess of the rates charged in Irving for the same service, (c) because such temporary injunction was not authorized by the pleadings, (4) and that the court erred in holding that appellee telephone company will suffer irreparable injuries if its petition for a temporary injunction should be denied.

The record shows that on October 20, 1959, the City Council of the City of Carrollton granted to The Southwestern States Telephone Company a franchise which was accepted by the telephone company. The franchise authorized appellee telephone company to operate within the limits of appellant city and by its terms was to run until October 1, 1984, a period of twenty-five years. The franchise provided that the telephone company was authorized to charge reasonable rates for services furnished under the franchise subject to regulation by the city. The franchise recited that the city and the telephone company had entered into a written agreement on the same date as the franchise ordinance and that such agreement was made a part of the franchise ordinance for all purposes. The agreement referred to in the franchise ordinance stated that the city had granted the telephone company the right to put into effect certain monthly charges for telephone service between the subscribers within the City of Carrollton and subscribers in Farmers Branch, Renner, Addison and the City of Dallas. The agreement provided that the rates to be charged for the "Dallas Service" would be the rates set forth in the rate ordinance. The agreement further provided that the rates being charged for the "Dallas Service" in the rate ordinance were identical with the rates charged for similar service in the City of Irving and that it was the purpose and intention to establish the rates in force and effect from time to time similar to charges for such telephone service in the City of Irving. It further provided that it was the intention of the parties that the agreement, franchise ordinance and rate or-

dinance should be considered together as one instrument.

On October 20, 1959, appellant city adopted a rate ordinance fixing the rate authorized to be charged by the telephone company for the various types of service furnished. Such rate ordinance fixed "Dallas Service" rates for business one party at $16.00 per month and residence one party at $6.00 per month. This rate ordinance has never been repealed, amended or modified by the City Council.

On September 24, 1963, the telephone company by letter notified its subscribers in appellant city that as of October 1st, 1963, the extended .area telephone service from Carrollton to Dallas central zone was being increased from $6.00 and $16.00 per month respectively to $10.00 and $20.00 respectively for one party residence and one party business service. The telephone company at no time submitted to the City Council of appellant city an application to increase its "Dallas Service" rates for one party residence from $6.00 to $10.00 per month or one party business from $16.00 to $20.00 per month. The telephone company had submitted an application to appellants' City Council to increase one party business to $23.00 per month and one party residence to $13.00 per month which was denied by the Council. The telephone company made no application for rehearing for such increase in rates.

Article 1119, Vernon's Ann.Tex.Civ.St. provides:

"The governing body of all incorporated cities and towns in this State incorporated under the General Laws thereof shall have the power to regulate, by ordinance, the rates and compensation to be charged by all persons, companies, or corporations using the streets and public grounds of said city or town, and engaged in furnishing water, gas, telephone, light, power, or sewage service to the public, and also to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules, and regulations."

Article 1124, V.A.T.C.S., provides:

"Any city having a special charter or a charter adopted or amended under the provisions of chapter 13 of this title, and having authority under its charter to determine, fix and regulate the charges, fares or rates of compensation to be charged by any person, firm or corporation enjoying a franchise in said city, shall in determining, fixing and regulating such charges, fares or rates of compensation, base the same upon the fair value of the property of such person, firm or corporation devoted to furnishing service to such city, or the inhabitants thereof * * *."

Article 1175, V.A.T.C.S., authorizes the City:

"To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, street railway, interurban railway, steam railway, gas company, or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by any such ordinance. To determine, fix and regulate the charges, fares or rates of any person, firm or corporation enjoying or that may enjoy the franchise or exercising any other public privilege in said city and to prescribe the kind of service to be furnished by such person, firm or corporation, and the manner in which it shall be rendered, and from time to time alter or change such rules, regulations and compensation; * * * In order to ascertain all facts necessary for a proper understanding of what is or should be a reasonable rate or regulation, the governing authority shall have full power to inspect the books and compel the attendance of witnesses for such purpose."

On September 19, 1961, the City of Carrollton adopted a Home Rule Charter.

Section 8.11 of the Home Rule Charter of the City of Carrollton provides in part as follows, to-wit:

"The council shall have full power, after due notice of hearing, to regulate by ordinance the rates and service of every public utility operating in the City of Carrollton, and in this connection Article 1119 to 1124a, both articles inclusive, of the 1925 Revised Statutes of the State of Texas, as now or hereafter amended, are adopted as a part of this charter, except that if any of said articles or any provisions thereof be in conflict with any other provision or provisions of this charter, the said provision or provisions of this charter shall take precedence."

Section 8.12 of the Home Rule Charter of the City of Carrollton provides as follows, to-wit:

"No person or corporation enjoying any franchise to operate a public utility within the City of Carrollton shall ever make any change or fix any rate for public service to its patrons or the inhabitants of the City of Carrollton without first being authorized by the Governing Body of the City by an ordinance or order approving the same, and no public utility shall contest any rate or change or order fixed by the Governing Body of the City under the authority otherwise conferred in the Charter of the City in any suit or cause of action in any court until after such utility has filed a motion for a rehearing with the Governing Body of the City specifically setting out the grounds of complaint against any such order or ordinance, fixing any rate or charge and until the Governing Body of the City shall have passed upon the said motion for rehearing."

■■ The court did not err in denying the request of appellant City of Carrollton for a temporary injunction and in overruling appellants' plea in abatement to appellee's petition for a temporary injunction. It is held by the courts of this state that, under present statutes, rates for intrastate service such as the "Dallas Service" which is here involved, is not within the jurisdiction of cities and that cities therefore have no power to regulate rates for such service. See City of Weslaco v. General Telephone Company of The Southwest, Tex.Civ.App., 359 S.W.2d 260, (Ref. N.R.E.) and cases cited therein. Thus, a public utility having a franchise to operate its business and render service within a city is not required to obtain permission of such a city to increase rates for intrastate service or to exhaust the administrative remedies provided under the city charter concerning rate questions which involve purely local service before placing increased intrastate rates into effect.

■ Appellant particularly relies upon Sections 8.11 and 8.12 of its Home Rule Charter, contending that the telephone company is not entitled to an injunction as a matter of law because it is attempting to place into effect a new and increased rate for services rendered to the inhabitants of a city without complying with the requirements of said charter provisions by exhausting the administrative remedies therein provided. We cannot agree with this contention. A careful examination of the charter provisions relied upon shows that they, like the statutes, do not grant the city the right to regulate intrastate rates or require a public utility to exhaust administrative remedies before the City Commission before increasing such intrastate rates. Said charter provisions apply only to local service.

■ We also overrule appellants' contention that the court erred in not granting the City of Carrollton a temporary injunction so as to maintain the status quo during the pendency of this suit. In this connection appellants contend that the status quo to be preserved was the rate ordinance of October 20, 1959. It is well settled that the status quo to be preserved in such cases is that status which does not deprive appellee of its property without due process of law.

City of Houston v. Southwestern Bell Telephone Company, Tex.Civ.App., 263 S.W.2d 169, (Writ Ref.); General Telephone Company of the Southwest v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385.

In the case of the City of Baytown v. General Telephone Company of Southwest, Tex.Civ.App., 256 S.W.2d 187, 194 (Ref. N.R.E.), it was stated that

"* * * a temporary injunction will issue when three things are made to appear: (1) that there is a reasonable probability that the utility will succeed on final hearing, (2) that the loss to the utility resulting from a refusal to grant the temporary injunction will be irreparable, and (3) that the customers can be adequately protected by bond."

Also see City of Baytown v. General Telephone Company of the Southwest, Tex.Civ. App., 256 S.W.2d 187; General Telephone Company of the Southwest v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385. Appellant urges points contending that in the instant case there was no evidence of a reasonable probability that the telephone company will succeed on a final hearing, and no evidence that the telephone company will suffer irreparable injuries if its petition for a temporary injunction is denied. The effect of appellant's contention in regard to the probability that the telephone company may recover upon a final hearing is a contention that because the evidence is undisputed that the telephone company has not exhausted its administrative remedy before the city commission prior to filing this suit, and because the exhausting of such administrative remedy is a prerequisite to its right to bring such a suit, there is no probability that the telephone company will succeed upon a final hearing. This contention is not well taken. The temporary injunction obtained by the telephone company only enjoined the city from interfering with the telephone company in promulgating rates and charges for the Dallas service, which is intrastate service. The temporary injunction did not enjoin the city in its regulation of purely local service. As heretofore indicated, under present statutory and case law in Texas, there is no duty on the part of a telephone company to exhaust any administrative remedy before a city commission prior to promulgating rates for long distance or intrastate service. The fact that the telephone company did not exhaust administrative remedies required in rate cases involving purely local service does not preclude a reasonable probability that it will succeed on a final hearing of this case which involves intrastate rates.

Generally speaking, the right to prescribe rates for telephone service belongs primarily to the company furnishing such service subject to the power of the state to regulate same through some duly authorized agency. The right to regulate intrastate rates has not been delegated by the state to appellant city, either by statute or by its charter. However, the right of the telephone company to prescribe such rates is subject also to the requirement that the rates be reasonable. 86 C.J.S. Telegraphs, Telephones, Radio, and Television p. 102. The telephone company contends that the changed rates prescribed by it are reasonable and are necessary for it to earn a fair return on its investment and that the court properly granted its temporary injunction because a continuation of the old rates would cause it irreparable injury. In our opinion, appellee's contention in this respect is well taken. The sworn pleadings of appellee telephone company show that its operation in providing the Dallas service is at a loss; that to provide the Dallas service to subscribers in the City of Carrollton it became necessary for appellee to enter into an agreement with Southwestern Bell Telephone Company which operated the local exchange in Dallas and to pay to said company monthly compensation for the furnishing of its facilities in providing such extended area service; that to provide the Dallas service to subscribers in the City of Carrollton at the rate of $6.00 per month, which is the rate that appellant seeks to maintain, appellee has been required to and has agreed to pay Southwestern Bell Telephone Company the sum of $5.45 per month; that the charges being paid Bell

Telephone Company for providing such extended area service is reasonable and that it was and is necessary for appellee to enter into such an agreement with Bell Telephone Company and that such charges be paid to it before appellee can render such extended area telephone service to subscribers in the City of Carrollton; that appellant City of Carrollton at the time it enacted and promulgated the 1959 rate ordinance had full knowledge of the fact that appellee could not render such Dallas service without utilizing the facilities of the Bell Telephone Company. Appellee telephone company further stated under oath that the compensation being paid Bell Telephone Company for providing the Dallas service was the lowest and best compensation which it had been able to negotiate with Bell Telephone Company for such service and was a reasonable and necessary charge and constituted an integral part of appellee's cost in providing the Dallas service to its subscribers in the City of Carrollton. Appellant has not by sworn pleadings or otherwise denied appellee's sworn pleading that it is furnishing the Dallas service at a loss, and the court was justified in accepting that fact as true. McAmis v. Gulf, Colorado & Santa Fe Railway Company, 184 S.W. 331, (Writ Ref.); Rule 686, Texas Rules of Civil Procedure. Appellant's contention that there is no showing that the telephone company would suffer irreparable injuries unless its request for a temporary injunction is granted is therefore not well taken. Under these circumstances we are of the opinion that the court did not abuse its discretion in granting appellee the temporary injunction complained of.

■ We next consider appellant's contention that the temporary injunction was improperly granted because the telephone company agreed that the rates in Carrollton for Dallas service would be the same as the rates for Dallas service furnished to the City of Irving, and that the rates sought to be put into effect by appellee for such service are in excess of the rates charged in Irving for the same service. The agreement between appellant City of Carrollton and appellee telephone company did make the Irving rates a standard or guide to be used in determining the rates to be charged Carrollton subscribers for the Dallas service, but did not constitute an unconditional obligation on the part of the telephone company to make the Irving rates the Carrollton rates. The agreement also provided that nothing contained therein or in the rate and franchise ordinance should be construed to limit or modify in any manner "the right of Telephone Company to a fair return on the fair value of its property devoted to furnishing local exchange telephone service in the Carrollton, Texas, telephone exchange, and either of said parties may at any time that they feel that they have just cause therefor be at liberty to exercise such rights as given and granted unto them by the law of this State." Appellee, under the contract, then has the right to take such action under the laws of this state as are necessary to enable it to earn a fair return upon the fair value of its property. The agreement, in our opinion, does not prevent the court from granting the temporary injunction complained of.

■ Appellant further complains that the court erred in granting appellee telephone company a temporary injunction because same was not authorized by appellee's pleadings; that appellee sought a temporary injunction as an alternative plea and only under specified circumstances which never came to pass, that is, that the court should find that the telephone company "did not have the right and power to place into effect the increased rates" in question. The court had already denied the request of the city for a temporary injunction against the telephone company. Since the issues involved were substantially the same and had already been decided in favor of appellee in determining that appellant was not entitled to a temporary injunction, we cannot see how appellant could be damaged by the granting of appellee's temporary injunction, particularly in view of the fact that the court required appellee to file a refunding bond for the protection of telephone users in the City of Carrollton. This ac-

tion of the court was without doubt an adequate protection of appellant's rights. The error, if any, was harmless. Actually what the court did was to preserve the status quo and to thus protect the rights of all parties pending final hearing.

The judgment is in all things affirmed.