**CITY OF ALVIN, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 16376.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 14, 1974.

Rehearing Denied Jan. 9, 1975.

———◆———

McNeal, Thrash & Williams, William W. McNeal, Alvin, for appellant.

Sears and Burns, Will Sears, James M. Shatto, Houston, Davis & Kee, Leland B. Kee, Angleton, for appellee

PEDEN, Justice.

The City of Alvin brought this suit for a declaratory judgment that it has the right and power to regulate rates charged for telephone service on an exchange that provides "Extended Houston Metropolitan Service," to rescind an increase in rates ordered by Southwestern Bell for that service and to order refunded all charges in excess of those approved by the Alvin City Council.

After a non-jury trial, judgment was entered denying all relief sought by the City.

Prior to August 2, 1970, telephone subscribers in the City of Alvin could not make toll-free calls to telephones located outside the City. The scope of Alvin's toll-free calling was expanded on that date to include the Liverpool exchange and the Friendswood and Manvel zones; it was expanded again in 1972 to include the Dickinson, League City and Arcola exchanges, a total of 35,744 telephones. This became Alvin's "585" exchange.

Also in August, 1970, Southwestern Bell offered its Alvin customers optional toll-free calling to the Extended Houston Metropolitan Area, including all areas in the 585 exchange plus Houston and its surrounding areas, a total of 1,356,603 telephones as of January 1, 1974. This is Alvin's "331" exchange. It was initiated after a resolution was passed by the Alvin City Council requesting Southwestern Bell to provide toll-free service to the Extended Houston Metropolitan Area for Alvin cus-

tomers at certain specified rates, which had been filed by the company with the city secretary.

The rates prescribed in the resolution remained in effect until April 12, 1973, when Southwestern Bell increased the rates for the 331 exchange without the approval of the Alvin City Council, apparently precipitating this declaratory judgment action to allow the City to regulate the 331 exchange rates. The record does not disclose that the City has passed any ordinance regulating the rates charged to subscribers to the 331 exchange.

The trial court entered a judgment that the City take nothing and found that the rates charged customers of the 331 exchange are not subject to regulation by any city or town. From that holding the City appeals and presents four points of error:

1) The trial court erred in rendering judgment for Southwestern Bell because Alvin has the power to regulate rates charged telephone customers within its city limits;

2) The court erred in denying the relief sought by the City because Southwestern Bell had previously submitted to the City's rate-making authority in regard to the 331 exchange;

3) The court erred in failing to hold that the undisputed facts demonstrate that an implied agreement existed between the parties granting the City rate-making power, and

4) Conclusion of fact 21, that there was no agreement between the parties to allow Alvin to regulate the 331 exchange is contrary to the overwhelming weight and preponderance of the evidence and does not support the judgment of the trial court.

Alvin is a Home Rule City as provided for by Art. XI § 5 of the Texas Constitution, Vernon's Ann.St. The parties have stipulated in this court that the charter be-

fore us is a true copy of the City's home rule charter.

Article 1175 § 12 of Vernon's Texas Civil Statutes grants home rule cities the exclusive power to grant franchises to telephone companies to use the city's streets and public property. Articles 1119 and 1124, V.T.C.S., grant home rule cities the power to regulate, by ordinance, the rates charged by telephone companies using the streets or public grounds of the city.

The home rule charter of the City of Alvin contains this provision concerning its power to regulate utility rates:

Art. IX

"Sec. 8. Regulation of rates.

"The Council shall have full power, after notice and hearing, to regulate by ordinance, the rates of every public utility operating in the City provided that no such ordinance shall be passed as an emergency measure; shall have the power to employ expert advice and assistance in determining a reasonable rate and equitable profit to the public utility; and shall have the power to require within the franchise grant, or any extension or renewal thereof, or as a condition precedent to any hearing concerning rates and service of any public utility operating within the City, that the movant seeking the rate or service change pay the reasonable cost of the service of a rate consultant chosen by the Council."

This section merely authorizes the City to regulate by ordinance the rates of utilities operating in the City.

■■■ While Alvin does have the authority to regulate local telephone rates, it does not have the power to regulate intrastate telephone rates. City of Weslaco v. General Telephone Co. of Southwest, 359 S.W.2d 260 (Tex.Civ.App.1962, writ ref. n. r. e.); City of Carrollton v. Southwestern States Tel. Co., 381 S.W.2d 401 (Tex.Civ. App.1964, writ ref. n. r. e.). Prior to the extension of toll-free calling to the Hous-

ton Metropolitan Area, residents of Alvin placing calls to telephones in the extended service area paid a long distance toll charge for each of them. Clearly, this was intercity, intrastate service, and the City of Alvin could not regulate the rates charged for it. A change in the method of billing will not alter the fact that the service provided is intrastate.

Both the 585 and 331 exchanges are located in Alvin. Together they provide Alvin's local service. The 585 and 331 exchanges use some of the same equipment, but they have separate trunks and switching equipment located within the same building in Alvin. A person having a 585 number may live next door to one having a 331 number. Clearly, part of the service provided by the 331 exchange and its related equipment is local, but a Company witness testified without contradiction that there are between 80 and 100 exchanges in the calling scope of the 331 exchange. In describing the changes made in the equipment to handle calls to the extended area, he related that instead of using the services of long distance operators, the system now utilizes tandem switches installed in places outside of Alvin to complete those calls. Southwestern Bell does not dispute that part of the revenues earned by the 331 exchange are local. It pays a gross receipt tax of 2% upon that portion of gross earnings it deems allocable to local service.

Advancement in technology and expansion of metropolitan areas to include more than one municipality have changed the nature of telephone service. No longer is the distinction between local and intrastate service easily made. Through extended metropolitan area services, the Company provides in the Alvin 331 exchange both local service and flatrate service to thirty-qne other incorporated cities.

Both the City and the Company agree that the 585 exchange is local and thus subject to regulation by the City of Alvin. The optional availability of extended intrastate service through 331 exchange suggests how it should be treated for purposes of rate regulation. Those wishing to avoid its higher base cost may use the more local 585 service. We consider this optional availability of extended intrastate service to be a reasonable basis for concluding that 331 service more logically falls into the category of intrastate service than into that of local service.

A third type of service is available to Alvin customers of the company: "Wide Area Telecommunications Service" or "WATS." At a much higher monthly rate, a WATS subscriber may make both local calls and an unlimited number of calls to any other point in Texas. WATS rates are clearly not subject to regulation by municipalities.

The Houston Extended Metropolitan Area service furnished to 331 subscribers in our case is similar to the optional "Dallas Service" which was held to be intrastate service in *Carrollton,* supra, while the 585 service in our case is similar to that held in General Telephone Co. of Southwest v. Cities Littlefield, 498 S.W.2d 375 (Tex.Civ.App.1973, writ ref. n. r. e.) to require treatment as a single (local) unit for regulatory purposes.

We overrule the appellant's first point of error.

Alvin contends that if it does not have the statutory power to regulate the phone rates, a contractual right to do so is implied by the actions of the parties. There is evidence in the record that there was a desire by some members of the community to obtain extended service for Alvin and that Southwestern Bell approached the City Council at an informal meeting and presented the 331 exchange plan to the Council. A resolution was worded by the telephone company and passed by the City Council requesting Southwestern Bell to inaugurate the Extended Houston Metropolitan Service and to file its schedule of rates with the City Secretary. The resolution further provided: "All changes in said schedule of rates . . . shall be filed with the City Secretary."

■ The evidence does not support the appellant's position that Southwestern Bell had previously submitted to the City's rate-making authority with regard to the 331 exchange. Alvin may not regulate public utility rates except by ordinance. Art. 1124, V.T.C.S.; Art. IX § 8 Charter of the City of Alvin. The trial court did not err in finding that no agreement existed between ·Alvin and Southwestern Bell whereby Alvin was to fix the rates charged on the 331 exchange. Nor can we say that the undisputed facts demonstrate that an implied agreement existed between the parties granting the City rate-making power; the trial court did not err in failing to so hold. We overrule the appellant's second, third and fourth points of error.

Affirmed.