**CITY OF NASSAU BAY, Texas et al., Appellants,**

**v.**

**NASSAU BAY TELEPHONE COMPANY, INC., Appellee.**

*No. 16371.*

Court of Civil Appeals of Texas, Houston (1st Dist.).

Dec. 19, 1974.

Rehearing Denied Jan. 16, 1975.

Kiibler & Kiibler, Dick H. Gregg, Jr., La Porte, for appellants.

Carrington, Coleman, Sloman, Johnson & Blumenthal, John Andrew Martin, Dallas, Edward G. Murr, Houston, for appellee.

COLEMAN, Chief Justice.

This is a telephone rate case. After a trial to the court without a jury a judgment unsatisfactory to appellants was entered. Findings of fact and conclusions of law were filed. The principal issue to be determined is whether or not a home rule city is authorized by the laws of this state to regulate the rates charged by a telephone company when the only service furnished to the residents of such a city is extended metropolitan area service.

On January 1, 1974 Nassau Bay Telephone Company, Inc. was merged into the Continental Company of Texas. Originally the Telephone Company began service of a purely local nature to the residents of what is now the City of Nassau Bay, Texas. The rates for this service were set by the Telephone Company without supervision or regulation. Subsequently the company offered an extended area service which allowed its subscribers to initiate calls to neighboring communities without toll charges. The company raised the rates to compensate for the increase cost of this "EAS" service. These rates were in effect prior to May, 1973. In May, 1973 rates were again raised. Prior to this date the company had made a large investment in equipment which made it possible for it to furnish its subscribers extended metropolitan area service. This "EMS" service allowed the company's subscribers to initiate and receive calls from throughout the metropolitan Houston area without toll charges. In order to furnish this service the Telephone Company necessarily had to enter into agreements with the Southwestern Bell Telephone Company and the General Telephone Company for permission to use their facilities in the various communities in and around Houston in Harris County, Texas. After the rates were raised by the company in May, 1973, the City for the first time undertook to establish rates by city ordinance. Preceding the passage of the ordinance the City held rate hearings at which time testimony was produced by the Company and by an expert employed by the City. The rate ordinance was passed in September, 1973 and established rates which were somewhat lower than those placed in effect by the Company in May, 1973. This suit was then filed by the Company to enjoin enforcement of the rates set by the City which it contended were confiscatory in that these rates failed to allow the Company a reasonable return on the fair value of the property used and useful in furnishing the service. The judgment of the trial court sustained this contention and ordered that higher rates be placed into effect.

The Telephone Company does not have a franchise to furnish telephone service in the City of Nassau Bay and it has entered into no agreement with the City with reference to the rates to be charged either for the "EAS" or the "EMS" telephone service.

The appellants (hereinafter referred to as the City) answered the Telephone Company's petition for injunction and filed a cross-action seeking a declaratory judgment

that their rate ordinance was unambiguous and certain and applied to the integrated local rate which included the EMS service charges; that the EMS charges are local charges and subject to City regulation. They also sought a declaration that the rate ordinance was valid and afforded the Company a fair return on the fair value of property used and useful within the City. The City also sought to have the Company restrained from charging a rate greater than the rate imposed by their ordinance for services local in nature, including but not limited to EMS charges, further asked that the Company be restrained from unilaterally converting its EMS equipment from non-optional to optional capability.

The trial court found that the EMS service furnished on a non-optional basis to the subscribers of the Nassau Bay exchange is an intrastate service and not a local service within or subject to the rate making jurisdiction or power of the City. Appellants have attacked this finding on the ground that such service is local in character as a matter of law and therefore is properly subject to municipal regulation. They further contend that Articles 1175(12) and 1124, Vernon's Ann.Civ.St., delegated to home rule cities the power to regulate extended metropolitan service rates.

Both parties state in their pleadings that the City of Nassau Bay, Texas is a home rule city. The court has not been furnished with a copy of the charter and for the purposes of this opinion we will assume that the City has such power to regulate the rates of the public utilities within its borders as is authorized by the General Laws of the State of Texas.

In City of Arlington v. Lillard, 116 Tex. 446, 294 S.W. 829 (1927), the court said:

"The limitation of power in mind and adhered to here is that the jurisdiction and power exercised by a municipal corporation is and must be confined to the territory of its situs (except where authorized for purely local purposes), to its inhabitants, to its corporate entity 'and cannot be divorced therefrom, either in fact, thought or law.'

"Judge Cooley, in Cooley's Constitutional Limitations (7th ed.) p. 309, says: 'The powers conferred upon municipalities must be construed with reference to the object of their creation, namely, as agencies of the state in local government. The state can create them for no other purpose, and it can confer powers of government to no other end, without at once coming in conflict with the constitutional maxim, that the legislative power cannot be delegated, or with other maxims designed to confine all the agencies of government to the exercise of their proper functions. And wherever the municipality shall attempt to exercise powers not within the proper province of local self-government, whether the right to do so be claimed under express legislative grant, or by implication from the charter, the act must be considered as altogether ultra vires, and therefore void.' "

The court also approved the rule quoting from 28 Corpus Juris, page 265, as follows:

" 'Where a particular power is claimed for a municipal corporation * * * any fair, reasonable doubt as to the existence and possession of the power will be resolved against the corporation, and the power denied to it.' Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143."

In Coleman Gas & Oil Co. v. Santa Anna Gas Co., 67 S.W.2d 241 (Com.App. Tex., Sections A and B, 1933), the court stated:

"With respect to the power to regulate rates of public utilities, certain fundamental rules are well established: (1) That the inherent power to regulate rates rests with the state; (2) that, if the Legislature delegates power to cities and towns to regulate rates, it must be plainly granted; and (3) all doubts concerning

the grant of such power will be resolved against the municipality. . . ."

█ A city has no inherent power to regulate the rates charged by a public utility. Its power must be derived from an express grant from the legislature. Southwestern Bell Telephone Co. v. Houston Independant School Dist., 397 S.W.2d 419 (Texas 1965). The Supreme Court of Texas, in General Telephone Company v. City of Wellington, 156 Tex. 238, 294 S.W.2d 385 (1956), held that where the telephone company served the City of Wellington and certain suburban communities through a single exchange, charging a flat rate for the service, the company, in attacking a rate ordinance as confiscatory was not required to allocate the cost of, and income from, the operation within the city limits in order to establish confiscation. The court said:

> ". . . Once we admit . . . that the single community exchange flat rate system should be used as an admittedly legal and the most natural and convenient form of operation for all concerned, it would seem to follow that the rates in return should be determined upon the same basis."

The statutory source of the rate regulatory powers of a city was given careful consideration in City of Weslaco v. General Telephone Company of the Southwest, 359 S.W.2d 260 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.). There the court said:

> "City, under existing authorizations, does not have rate regulatory powers over intra-state calls. A delegation of such powers must be expressed by clear language or clear implication. (citations omitted) Such delegation of powers cannot extend beyond the territory of the city or its inhabitants . . .

> "The power to regulate telephone rates comes from Articles 1119, 1124 and 1175(12), Vernon's Tex.Civ.Stats. Under those statutes the business of providing

local service may be authorized by a franchise previously granted by a municipality . . .

> "Intra-state service, on the other hand, may be furnished without the grant of a franchise. This important distinction between local service and intra-state service is made in Athens Telephone Co. v. City of Athens, Tex.Civ.App., 163 S.W. 371. Accord, Athens Telephone Co. v. City of Athens, Tex.Civ.App., 182 S.W. 42. A city may not interfere with such service and the service may be furnished without a franchise, as a matter of right. . . . We regard it settled, therefore, that the powers of cities over local telephone service are different from and broader than their powers over intra-state service. A franchise, though non-exclusive, may be required for local service but not for intra-state service."

After the court had carefully considered and discussed the provisions of Article 1175, supra, and Article 1124, supra, it concluded:

> ". . . Because General Telephone does have a franchise in said City, its rates may be regulated. The franchise, however, is essential to local service, not intra-state service. We conclude that the powers over rate regulation are co-extensive with the powers over local service which the City possessed in granting its franchise. The powers do not include intra-state service . . ."

The City of Weslaco case was followed in City of Carrollton v. Southwestern States Tel. Co., 381 S.W.2d 401 (Tex.Civ.App.—Eastland 1964, writ ref'd n. r. e.). In both of these cases it appears that the telephone company offered a purely local service, the rates for which were concededly subject to regulation by the city, and also an extended area service which was available to the customers within the city at a higher rate. This optional service enlarged the local calling area of the subscribers beyond the geographical limits of the subscribers' exchange area to include other exchange areas.

These cases were distinguished by the court in General Telephone Co. of the Southwest v. Cities of Littlefield, Amherst and Anton, 498 S.W.2d 375 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.). In the Littlefield case the only service offered provided individual subscribers with purely local telephone service, as well as the privilege of making an unlimited number of toll free calls between the cities, for a single monthly rate. The court held that there was no attempt to segregate the two types of services or their rate bases so that the system must be treated as a single unit for regulatory purposes. The Amarillo court stated:

"The court in neither the Carrollton nor the Weslaco case was confronted with the type of integrated system found herein, nor with an agreement which reserved regulatory authority of extended area service to the city. We consider the rule announced in Carrollton and Weslaco that a city has no rate making authority over intrastate rates is inapplicable to the present situation. A rule better adapted to the situation in this case is that a municipal corporation may, in granting a telephone franchise, insert into such grant provisions of a general nature as to rates to be charged by the telephone company for its services, and when such company accepts such a provision, it becomes bound thereby. . ."

■ In our case there is only one service offered, the EMS service. The City has made it abundantly clear that it does not desire a purely local service. The telephone company is presently using the streets, alleys and public easements of the City, and it pays the City a tax based on its gross receipts. The City has not attempted to require the company to accept a franchise granting the City the right to regulate the rates charged by the company as a condition to the use of its streets and alleys and other public ways. The City has no contractual right to regulate the rates charged by the company. If we construe the statutes granting home rule cities the power to regulate rates of the telephone company strictly, as we must, we reach the conclusion that the present statutes do not authorize a home rule city to regulate the rates charged for the EMS service furnished to the residents of Nassau Bay by the Telephone Company. City of Weslaco v. General Telephone Co. of the Southwest, supra.

■ The City contends that a portion of the judgment entered by the trial court constituted judicial rate making which is contrary to the Constitution and the law of the State of Texas and therefore was erroneous. In addition to permanently enjoining the City and certain named employees thereof from enforcing or attempting to enforce the rate regulation ordinance No. 73–117 and from assessing or attempting to enforce against the Telephone Company, its officers, agents or employees, any fine or penalty or criminal charges on account of the failure of plaintiffs to charge and collect only the rates and charges for telephone service described by said rate regulation ordinance, the court entered this further order:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED and this Court does Find and Declare that the rates presently in effect fail to provide sufficient net operating income to Plaintiff to enable it to earn a fair return on its investment in the Nassau Bay Exchange, and that Plaintiff be permitted to enact a new schedule of rates which will provide a maximum of additional Gross Operating Revenue over such revenue as provided by the rates presently in effect in an amount not to significantly exceed $49,743 per year. The Plaintiff is to develop such subscriber rates that will produce that approximate amount of additional gross revenue with the advice of the Defendant-City and its rate consultant. In this connection, such Defendant-City's rate consultant shall be given a maximum of three business days from the time he has received the proposed subscriber rates from the Plaintiff to advise

the Plaintiff as to such rates. After the expiration of such three-day period, the Plaintiff can put its rates into effect immediately."

The court further ordered that in the interest of judicial economy and in equity and fairness to all parties that the orders of the court relating to rates "are to be effective until a full fiscal year of Plaintiff (the calendar year 1975) has passed with the new rates as set out under this order to be in effect and until the results of operations of such year have been established and a reasonable time has elapsed for the ordinary and usual preparation of accounting and other financial statements reflecting the results of such period, and that neither the Defendants, the Plaintiff, anyone in active concert or participation with them or either of them, or anyone claiming rights by, through or under such party, can maintain any action, legal, equitable or otherwise to challenge the rates herein fixed."

Appellants contend that the court thus erred in enjoining a home rule city from its statutory legal obligation and duty to regulate the utility rates. We sustain both of these points of error.

The fixing of domestic utility rates is a legislative function of the state government. The legislature may fix the actual rate itself or may delegate the fixing of the rate to a subordinate body while itself prescribing rules and standards to govern and guide the subordinate body. Railroad Commission v. Houston Nat. Gas Corp., 155 Tex. 502, 289 S.W.2d 559 (1956). It has been held that courts do not and cannot regulate the rates of public utilities; that this regulation of rates is exclusively and inherently a legislative prerogative. City of Houston v. Southwestern Bell Telephone Co., 263 S.W.2d 169 (Tex.Civ.App.—Galveston 1953).

Section I of Article II of the Constitution of the State of Texas, Vernon's Ann.St., specifically provides that the exercise of executive, legislative and judicial powers is to be vested in separate and independent organs of government. The three departments are coordinate with and independent of each other, and none can enlarge, restrict or destroy the powers of the other. See Lytle v. Halff, 75 Tex. 128, 12 S.W. 610 (Texas 1889); Houston Tap & B. R. Co. v. Randolph, 24 Tex. 317 (1859). The action of the trial court in enjoining the City from exercising its legislative function is unauthorized and void.

The judgment of the trial court insofar as it enjoins the City of Nassau Bay and its officials, agents, servants, employees, representatives and successors, together with all persons acting in concert or participation with them from enforcing or attempting to enforce the rate regulation ordinance enacted by the City Council of the City of Nassau Bay, Texas on September 24, 1973, as provided in said judgment is affirmed. That portion of the judgment declaring that the rates presently in effect in said City fail to provide a sufficient net operating income to enable the plaintiff to earn a fair return on its investment and authorizing the plaintiff to enact a new schedule of rates which will provide a maximum of additional gross operating revenue in an amount not to significantly exceed $49,743.00 per year and all provisions of the judgment with reference to such new rates, are reversed in recognition of the principle that the Company is free to set its rates in the exercise of its business judgment and discretion so long as the rates set are not unreasonable or extortionate to the subscribers. City of Houston v. Glen Oaks Utilities, Inc., 360 S.W.2d 549 (Tex.Civ.App.—Houston 1962, ref'd n. r. e.); General Telephone Co. of the Southwest v. Cities of Littlefield et al., 498 S.W.2d 375 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.).

The judgment of the trial court is modified and as modified is affirmed.